654 S.E.2d 514 (2007)
In The Matter of R.B.B., Minor.
No. COA07-727.
Court of Appeals of North Carolina.
December 18, 2007.
Jayne B. Norwood, Nashville, for petitioner-appellee Nash County Department of Social Services, for petitioner-appellee.
North Carolina Guardian ad Litem Program, by Pamela Newell Williams, Raleigh, for the juvenile.
Annick Lenoir-Peek, for respondent-appellant.
BRYANT, Judge.
A.C.[1] (respondent) appeals from a 5 April 2007 order of adjudication of abuse and neglect and termination of parental rights as to her minor son, R.B.B. For the reasons stated herein, we affirm.
R.B.B. was born in early 2006. In the first seven months of his life, respondent had taken R.B.B. to numerous medical appointments for wellness checkups and for physical conditions, including vomiting, colds and bleeding gums. In July 2006, Dr. Shandal Emanuel, a pediatrician, examined R.B.B. for the first time at his six-month wellness checkup. At that time, R.B.B. weighed below the fifth percentile on the pediatric growth chart after a continual decline from a normal weight at his three-month checkup. On 14 August 2006, R.B.B. had a fever and was vomiting. Respondent took him to see Dr. Emanuel who noticed R.B.B. "had a bruise on the left temple area as well as two 1/2cm ulcerated lesions on the right lower abdomen that was suspicious for a burn." Dr. Emanuel prescribed antibiotics; however R.B.B.'s condition did not improve, he continued to lose weight, and on 18 August 2006, Dr. Emanuel admitted R.B.B to the hospital for "evaluation of dehydration, fever and vomiting." While at the hospital, a chest x-ray revealed R.B.B. had broken ribs. A full skeletal survey revealed "multiple healed fractures including [right and left] healed [] spiral tibia fracture[s]."
On 18 August 2006, based on the investigation of R.B.B.'s injuries, a non-secure custody order of R.B.B. was obtained by Nash County Department of Social Services (DSS-petitioner-appellee). On 21 August 2006, DSS filed a juvenile petition alleging R.B.B. to be abused and neglected. DSS gained non-secure custody of R.B.B. on 21 August 2006 and R.B.B. was placed in foster care the next day. Based upon the Nash County Sheriff Department's investigation of R.B.B.'s injuries, respondent and her live-in boyfriend (Josh Robles) were each charged with three counts of felonious child abuse.
At a 19 September 2006 hearing, the trial court determined R.B.B. would remain in the custody of DSS. At that hearing, respondent waived future hearings to determine R.B.B.'s custody. During the subsequent three months, multiple continuances were issued for the abuse and neglect adjudication hearing. On 22 December 2006, DSS filed a motion to terminate parental rights. After entering foster care, R.B.B. gained weight, *517 began reaching developmental milestones for his age and did not sustain any broken bones. The consolidated hearing for the abuse and neglect proceeding and the termination of parental rights proceeding was held on 8 and 9 February 2007. Specifically, the trial court found:
43. R.B.B. has been in foster care since August 22, 2006 when he was released from Nash General Hospital. He was seen by his Pediatrician Dr. Emmanuel [sic] on September 12, 2006 and by that date had gained ten ounces. When the child was placed in foster care . . . he could not roll over and could not sit alone [and] . . . by the age of nine months was sitting alone without support. He is now pulling up, crawling and will take a few steps if his hands are held. The child initially had no facial expression and had a flat effect. He has now "blossomed" and responds as a normal thirteen month old. He continues to gain weight, is no longer on special formula and is not experiencing gastrointestinal problems. He has had no broken bones while in foster care. He is bonded to his foster parents.
44. The Court heard and considered evidence put forth by the Respondent mother as to the steps she has taken since the child was removed from her care to demonstrate that she earnestly desires to be reunited with her child, however, the age of the child, the detailed admission of her frustration with the baby's crying, the number of injuries, the extent of the injuries, her knowledge of the danger of leaving the baby with [her boyfriend] and her insistence on continuing to do so when friends and family members encouraged her not to do so outweigh any potential benefits that this Court can find to the reunification process. The Court is equally [as] concerned by the mother's recent minimization to the mental health therapist of the seriousness of the injuries and their origin.
The trial court concluded R.B.B. to be neglected and abused and ordered respondent's parental rights terminated. From this 5 April 2007 order, respondent appeals.
Respondent argues the trial court erred by: (I) simultaneously conducting all adjudicatory and dispositional hearings related to both the abuse and neglect petition and the termination of parental rights petition; (II) failing to require DSS to use reasonable efforts for reunification; (III) failing to pursue a separate disposition other than termination of parental rights; (IV) finding and concluding respondent's parental rights should be terminated; (V) basing the termination of parental rights on a felonious child abuse charge; and (VI) finding and concluding termination of respondent's parental rights was in the best interest of R.B.B.

I & III
Respondent argues that the trial court erred by simultaneously conducting all adjudicatory and dispositional hearings related to both the abuse and neglect petition and the termination of parental rights petition. We disagree.
After an appropriate party files a juvenile petition alleging that a minor is abused, neglected, or dependent, the trial court must hold an adjudicatory hearing "designed to adjudicate the existence or nonexistence of any of the conditions alleged in [the] petition." N.C. Gen.Stat. § 7B-802 (2005). The allegations in the petition must be proved by clear and convincing evidence. N.C. Gen. Stat. § 7B-805 (2005). If the trial court finds the allegations proved by clear and convincing evidence, it must issue an adjudicatory order containing an affirmative statement of the standard of proof used. N.C. Gen.Stat. § 7B-807 (2005). The trial court will then hold a dispositional hearing and has broad discretion to craft a disposition designed to serve the juvenile's best interests. N.C. Gen.Stat. §§ 7B-901,-903,-905 (2005).
Likewise, a termination of parental rights action involves a two-step process. After an appropriate party files a termination petition, the trial court must hold an adjudicatory *518 hearing to determine whether grounds for termination exist. N.C. Gen. Stat. § 7B-1109(e) (2005); see N.C. Gen.Stat. § 7B-1111(a) (listing the various findings that may serve as grounds for termination). A finding that the parent has either abused or neglected the juvenile may serve as grounds for termination. Id. However, the trial court may make such a finding in the N.C.G.S. § 7B-1109 adjudicatory hearing without having previously adjudicated the juvenile abused or neglected in a prior abuse, neglect, or dependency action. See In re Faircloth, 153 N.C.App. 565, 571, 571 S.E.2d 65, 69 (2002) ("An adjudicatory hearing on abuse and neglect allegations is not a condition precedent to a termination hearing. . . . [S]uch a hearing on abuse and neglect may well [be] merely redundant with parts of [a] termination hearing."). The burden is on the petitioner to prove the allegations of the termination petition by clear, cogent, and convincing evidence. N.C.G.S. § 7B-1109(f) (2005). If the trial court finds the allegations proved by clear and convincing evidence, it must issue an adjudicatory order containing an affirmative statement of the standard of proof used. See In re Church, 136 N.C.App. 654, 657, 525 S.E.2d 478, 480 (2000) (holding "we read [section N.C.G.S. § 1109(f)] to require the trial court to affirmatively state in its order the standard of proof utilized in the termination proceeding"). The trial court then proceeds to the disposition stage where it must determine whether termination of parental rights is in the best interests of the child. N.C. Gen.Stat. § 7B-1110 (2005). If the trial court so determines, it may issue a termination of parental rights order. Id.
While the juvenile code contemplates two different stages in a termination action, it does not explicitly require that the two stages be conducted at two separate hearings. Indeed, our Court has previously held that a trial court may combine the N.C.G.S. § 7B-1109 adjudicatory stage and the N.C.G.S. § 7B-1110 dispositional stage into one hearing, so long as the trial court applies the correct evidentiary standard at each stage and the trial court's orders associated with the termination action contain the appropriate standard-of-proof recitations:
[A]lthough the court is required to apply different evidentiary standards at each of the two stages, we discern no requirement from the statutes . . . that the stages be conducted at two separate hearings. Moreover, since a proceeding to terminate parental rights is heard by the judge, sitting without a jury, it is presumed, in the absence of some affirmative indication to the contrary, that the judge, having knowledge of the law, is able to consider the evidence in light of the applicable legal standard and to determine whether grounds for termination exist before proceeding to consider evidence relevant only to the dispositional stage.
In re White, 81 N.C.App. 82, 85, 344 S.E.2d 36, 38 (1986); see In re Shepard, 162 N.C.App. 215, 221, 591 S.E.2d 1, 6 (2004) ("However, so long as the [trial] court applies the different evidentiary standards at each of the two stages, there is no requirement that the stages be conducted at two separate hearings.").
We must now consider whether a two-stage termination hearing may also be held concurrently with an N.C.G.S. § 7B-802 adjudicatory hearing on an abuse, neglect, or dependency petition. "When a petition for termination of parental rights is filed in the same district in which there is pending an abuse, neglect, or dependency proceeding involving the same juvenile, the court on its own motion or motion of a party may consolidate the action[.]" N.C. Gen.Stat. § 7B-1102(c) (2005). Respondent argues that if a trial court consolidates an abuse, neglect, or dependency adjudication with termination proceedings, then DSS is not required to attempt reunification efforts, thereby sending "a signal that DSS does not need the trial court's permission in establishing a permanent plan of care prior to deciding unilaterally to seek a case plan of termination of parental rights." We disagree.
In cases (such as this) where the trial court has found that reunification efforts would be dangerous or futile under N.C.G.S. § 7B-507(b), the juvenile code presents no obstacle to simultaneous hearings on an abuse, neglect, and dependency petition and a termination of parental rights petition. Indeed, *519 judicial economy and efficiency may be best served by a consolidated hearing in cases where the evidence necessary to support a finding that a juvenile is abused or neglected may be nearly identical to the evidence necessary to support a finding that grounds for termination exist. See N.C. Gen. Stat. § 7B-1100(2) (the spirit and intent of juvenile code is to "[r]ecognize the necessity for any juvenile to have a permanent plan of care at the earliest possible age")(emphasis added).
Here, the trial court properly concluded that reunification efforts would be dangerous due to a continuing threat of immediate harm to R.B.B. Specifically, the trial court found "the age of the child, the detailed admission of [respondent's] frustration with the baby's crying, the number of injuries, the extent of the injuries, [respondent's] knowledge of the danger of leaving the baby with [her boyfriend] and her insistence on continuing to do so when friends and family members encouraged her not to do so outweigh any potential benefits that this Court can find to the reunification process." The trial court concluded that grounds existed to terminate respondent's parental rights under N.C. Gen.Stat. § 7B-1111(a)(1) by finding and concluding R.B.B. was abused and neglected based on clear, cogent and convincing evidence. The trial court then separately concluded that it is "in the best interest[s] of the child . . . that the parental rights of [respondent] be terminated with regard to R.B.B. and that the permanent plan of adoption be pursued immediately." It is clear the allegations in both the abuse and neglect petition and the termination petition relied on much of the same evidence.
We emphasize how important it is for the trial court, when issuing its orders, to indicate the appropriate standard at each phase of the proceedings regardless of whether or not the hearings are conducted separately or, as in this case, consolidated into one hearing. Shepard, 162 N.C.App. at 221, 591 S.E.2d at 6 ("However, so long as the [trial] court applies the different evidentiary standards at each of the [] stages, there is no requirement that the stages be conducted at two separate hearings."). For purposes of ultimate clarity in consolidated hearings, trial courts are encouraged to either: (a) issue separate orders addressing the separate components of the consolidated hearings; or (b) sub-divide a single order into independent sections addressing each component of the consolidated hearing, with each section containing its own evidentiary standard recitation, findings of fact, conclusions of law, and appropriate order. Accordingly, while we caution the trial court on the importance of clarity of findings of fact and conclusions of law in consolidated hearings, we hold that in the instant case, the trial court did not err by simultaneously conducting all adjudicatory and dispositional hearings related to both the abuse and neglect petition and the termination of parental rights petition. These assignments of error are overruled.

II
Respondent argues the trial court erred by failing to require DSS to use reasonable efforts for reunification. North Carolina General Statutes, Section 7B-507 states the trial court's order placing or continuing placement of a juvenile with DSS must contain findings regarding reasonable efforts to reunify the juvenile with the parent unless the court is ordering that such reunification efforts cease. N.C. Gen.Stat. § 7B-507 (2005). "Where efforts to prevent the need for the juvenile's placement were precluded by an immediate threat of harm to the juvenile, the court may find that the placement of the juvenile in the absence of such efforts was reasonable." N.C. Gen.Stat. § 7B-507(a) (2005).
In finding of fact two of the order on "Need for Continued Custody Abuse, Neglect" filed 19 September 2006, the trial court found:
2. Pursuant to N.C.G.S. § 7B-506, the Court makes the following findings of fact as to the efforts, if any, which have been made to prevent or eliminate the need for placement of the juvenile into custody. The Department was precluded by an immediate threat of harm to the juvenile and placement of the juvenile in the absence of such efforts was reasonable.
*520 In finding of fact forty-two of the "Adjudication, Disposition and Termination of Parental Rights Order" filed 5 April 2007:
42. The child's injuries were of such a serious nature that the Department was precluded from making reasonable efforts to prevent or eliminate the need for the placement of the juvenile outside of the home.
Here, the trial court repeatedly found that the immediate threat of harm to R.B.B. out-weighed the reasonable efforts to reunify him with respondent. Due to the severe abuse by the mother and the mother's reaction to the boyfriend's abuse, the trial court determined it was not in the best interests of the child to order DSS to use reasonable efforts to reunify R.B.B. with respondent, as it was too dangerous to do so. The trial court properly complied with N.C.G.S. § 7B-507. This assignment of error is overruled.

IV & V
Respondent argues the trial court erred by finding and concluding respondent's parental rights should be terminated and basing the termination on a felonious child abuse charge. We disagree.
In determining whether a termination of parental rights is proper, we review whether there is an evidentiary support for the trial court's findings and whether the trial court's conclusions are supported by its findings. In re Gleisner, 141 N.C.App. 475, 480, 539 S.E.2d 362, 365 (2000). The trial court's findings must be based upon clear, cogent and convincing evidence. In re Smith, 146 N.C.App. 302, 304, 552 S.E.2d 184, 186 (2001). A trial court only needs to find one statutory ground for termination before proceeding to the dispositional phase of the hearing. N.C. Gen.Stat. § 7B-1111(a) (2005); In re Shermer, 156 N.C.App. 281, 285, 576 S.E.2d 403, 406 (2003). According to N.C. Gen.Stat. § 7B-101(1), an abused juvenile is:
Any juvenile less than 18 years of age whose parent, guardian, custodian, or caretaker: a. Inflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means; b. Creates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means[.]
N.C.G.S. § 7B-101(1) (2005).
The trial court found and concluded R.B.B. was an abused juvenile. Dr. Emanuel testified that R.B.B.'s injuries were not accidental and that "someone . . . physically abused this child." In her statement to the police, respondent admitted throwing R.B.B. in the air, hitting R.B.B.'s head against a wall, and that during diaper changes, she "gets frustrated so she takes [R.B.B.'s] legs and picks [him] up and twists" his legs. Respondent stated R.B.B.'s injuries "came from her" and she knew what she was doing to R.B.B. was wrong. Respondent's live-in boyfriend said he did not want to babysit R.B.B. because he had an anger problem; however respondent continued to allow him to care for R.B.B. even after she knew R.B.B. had been injured while left in her boyfriend's care. Where, as here, it is clear the trial court based the termination on detailed findings and conclusions as to the ongoing, severe and repeated abuse of R.B.B., respondent's argument that the termination was based solely on felonious child abuse charges lacks merit. These assignments of error are overruled.

VI
Respondent argues the trial court erred by finding and concluding it was in the child's best interests to terminate respondent's parental rights. We disagree.
§ 7B-1110. Determination of best interests of the juvenile
(a) After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest. In making this determination, the court shall consider the following:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

*521 (4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen.Stat. § 7B-1110(a) (2005). We review the trial court's conclusion that a termination of parental rights would be in the best interest of the child on an abuse of discretion standard. In re V.L.B., 168 N.C.App. 679, 684, 608 S.E.2d 787, 791 (2005) (citation omitted). "Abuse of discretion exists when the challenged actions are manifestly unsupported by reason." Barnes v. Wells, 165 N.C.App. 575, 580, 599 S.E.2d 585, 589 (2004) (internal quotation marks omitted).
In the case sub judice, the trial court, in its discretion, properly considered the factors enumerated in N.C.G.S. § 7B-1110(a) (2005). Specifically, the trial court found R.B.B. "is very bonded to his foster parents" and that given the "age of the child" returning R.B.B. to respondent would not be in his best interest. The trial court found R.B.B. did not develop as many illnesses in foster care as when in respondent's custody and that R.B.B.'s "current placement is appropriate and is in the best interest of the child." The trial court's order to terminate respondent's parental rights was not an abuse of discretion. This assignment of error is overruled.
Affirmed.
Judges McGEE and HUNTER concur.
NOTES
[1] Initials are used throughout to protect the identity of the juvenile.