IN THE SUPREME COURT OF NORTH CAROLINA

No. 299A19

Filed 17 July 2020

IN THE MATTER OF: S.M.M.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from order entered on 30 April 2019 by Judge Christy E. Wilhelm in District Court, Cabarrus County. This matter was calendared for argument in the Supreme Court on 19 June 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

> *Hartsell & Williams, PA, by H. Jay White and Austin "Dutch" Entwistle III, for petitioner-appellee Cabarrus County Department of Human Services.*
>
> *Womble Bond Dickinson (US) LLP, by Jacob S. Wharton and Ryan H. Niland, for appellee Guardian ad Litem.*
>
> *Mercedes O. Chut for respondent-appellant mother.*

EARLS, Justice.

Respondent appeals from an order terminating her parental rights to her minor child, S.M.M. (Sarah).[1] We hold the trial court properly complied with the Court of Appeals' mandate on remand from *In re S.M.M.,* 822 S.E.2d 329, 2019 N.C. App. LEXIS 13, 2019 WL 190200 (N.C. Ct. App. 2019) (unpublished), and the court's

---

[1] The minor child will be referred to throughout this opinion as "Sarah," which is a pseudonym used to protect the child's identity and for ease of reading.

conclusion that termination of respondent's parental rights is in Sarah's best interests does not constitute an abuse of discretion.

The Cabarrus County Department of Human Services (CCDHS) obtained non-secure custody of Sarah and filed a petition alleging she was a neglected juvenile on 5 November 2015.[2] After a hearing on 14 April 2016, the trial court entered an order adjudicating Sarah to be a neglected juvenile and continuing her in CCDHS custody. On 30 May 2017, CCDHS filed a motion in the cause to terminate respondent's parental rights to Sarah based on the grounds of neglect, failure to make reasonable progress, failure to pay a reasonable portion of the cost of Sarah's care, dependency, and abandonment. *See* N.C.G.S. § 7B-1111(a)(1)–(3), (6)–(7) (2019). The trial court entered an order terminating respondent's parental rights on 9 April 2018, concluding the grounds alleged by CCDHS existed and termination was in Sarah's best interests. Respondent appealed, and the Court of Appeals affirmed the trial court's adjudication of grounds based on neglect but reversed the court's best interests determination. *In re S.M.M.,* 822 S.E.2d 329, 2019 N.C. App. LEXIS 13, 2019 WL 190200. The Court of Appeals concluded the trial court's dispositional findings of fact did not address Sarah's likelihood of adoption, *see* N.C.G.S. § 7B-1110(a)(2) (2019), which was placed at issue by testimony at the hearing from a social worker and from

---

[2] A full recitation of the underlying factual and procedural history of this case can be found in the Court of Appeals' opinion in *In re S.M.M.*, 822 S.E.2d 329, 2019 N.C. App. LEXIS 13, 2019 WL 190200.

Sarah's guardian *ad litem* (GAL). The Court of Appeals remanded for the trial court to make findings of fact on this statutory factor. *In re S.M.M.*, 2019 N.C. App. LEXIS 13, at *13, 2019 WL 190200, at *5.

On remand, respondent filed a motion to reopen the evidence to present additional evidence of Sarah's likelihood of adoption, including evidence of the changes in her and Sarah's circumstances since the original termination hearing. After a 28 March 2019 hearing on the motion to reopen evidence, the trial court denied the motion by order entered 23 April 2019.

The trial court entered its amended order terminating respondent's parental rights on 30 April 2019. The court made multiple new findings of fact regarding Sarah's likelihood of adoption and again concluded termination of respondent's parental rights was in Sarah's best interests. Respondent appeals.

We first address respondent's argument that the trial court abused its discretion in denying her motion to reopen the evidence. Respondent contends the trial court could not comply with the mandate from the Court of Appeals without reopening the evidence, because the trial court could not make the necessary findings on Sarah's adoptability without considering her circumstances at the time of the remand hearing. Additionally, respondent contends the trial court was required to reopen the evidence despite the Court of Appeals' mandate leaving it to the trial court's discretion because "[w]henever the trial court is determining the best interest of a child, any evidence which is competent and relevant to a showing of the best

interest of that child *must be heard and considered* by the trial court, subject to the discretionary powers of the trial court to exclude cumulative testimony." *In re Shue*, 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984) (emphasis added). Respondent argues the Court of Appeals remanded the matter to the trial court for a new best interests determination, which thus required the trial court to hear any additional evidence proffered by the parties.

Contrary to respondent's assertion, the trial court was not required to reopen evidence on remand on the facts of this case. It is well established that the mandate of an appellate court "is binding upon [the trial court] and must be strictly followed without variation or departure. No judgment other than that directed or permitted by the appellate court may be entered." *Lea Co. v. N.C. Bd. of Transp.*, 323 N.C. 697, 699, 374 S.E.2d 866, 868 (1989) (alteration in original) (quoting *D & W, Inc. v. Charlotte*, 268 N.C. 720, 722, 152 S.E. 2d 199, 202 (1966)). The mandate of the Court of Appeals required the trial court to make findings of fact regarding Sarah's likelihood of adoption, a factor that must be considered in determining the best interests of a juvenile when terminating parental rights, *see* N.C.G.S. § 7B-1110(a)(2), and about which particular findings of fact must be made when conflicting evidence places the factor at issue. *See, e.g., In re A.U.D.*, 373 N.C. 3, 10–11, 832 S.E.2d 698, 702–03 (2019) (holding that a trial court is not required to make written findings concerning factors set out in section 7B-1110(a) in the absence of conflicting evidence relating to the factor in question). The Court of Appeals here held that the evidence

at the original hearing placed the likelihood of adoption factor at issue, but the trial court failed to make the requisite findings of fact. *In re S.M.M.*, 2019 N.C. App. LEXIS 13, at *13, 2019 WL 190200, at *5.

The Court of Appeals remanded the matter for the sole purpose of allowing the trial court to make the required findings, *id.*, not for a new dispositional hearing where the court would have been required to hear any relevant evidence as to Sarah's best interests. *Shue*, 311 N.C. at 597, 319 S.E.2d at 574. The Court of Appeals did note that "[t]he trial court retains the discretion to supplement its order as it sees fit, so long as it complies with the statute." *In re S.M.M.*, 2019 N.C. App. LEXIS 13, at *13, n3, 2019 WL 190200, at *5, n3. However, the opinion was silent as to whether the trial court should take new evidence on remand and, therefore, the Court of Appeals left that decision to the trial court's sound discretion. *See, e.g., In re J.M.D.*, 210 N.C. App. 420, 428, 708 S.E.2d 167, 173 (2011) ("Whether on remand for additional findings a trial court receives new evidence or relies on previous evidence submitted is a matter within the discretion of the trial court." (quoting *Hicks v. Alford*, 156 N.C. App. 384, 389, 576 S.E.2d. 410, 414 (2003))).

Most significantly, although respondent made general representations about the degree to which all children change between the ages of 10 and 12, nothing in respondent's motion identified any specific circumstances or forecast any particular changes in Sarah's life that would have any bearing on the question of the likelihood of her adoption. Mere speculation that some facts may have changed in the eighteen

months since the court originally heard the evidence is not sufficient to demonstrate that the trial court abused its discretion in denying respondent's motion to reopen the evidence on remand. Absent any forecast of relevant testimony or other evidence bearing upon the Court's ultimate determination of the child's best interests, the trial court's decision to refrain from reopening the record is entirely consistent with this Court's general admonition that a trial court must always hear any relevant and competent evidence concerning the best interests of the child. *See In re Shue,* 311 N.C. at 597, 319 S.E.2d at 576. In this case there was simply no further relevant and competent evidence to be heard by the trial court on remand.

The trial court was able to make the required findings concerning the likelihood of Sarah's adoption from the evidence presented at the original hearing. The new findings satisfy the mandate of the Court of Appeals, and we hold the trial court did not abuse its discretion in denying respondent's motion to reopen the evidence.

Respondent further contends the trial court never conducted a dispositional hearing and thus, never received proper dispositional evidence. However, the hearing transcript shows the trial court heard dispositional evidence from a CCDHS social worker and the GAL and received the GAL's dispositional report into evidence. Although the dispositional evidence was intertwined with adjudicatory evidence, a trial court is not required to bifurcate the hearing into two distinct stages. *See, e.g., In re R.B.B.,* 187 N.C. App. 639, 643–44, 654 S.E.2d 514, 518 (2007) ("[A] trial court

may combine the N.C.G.S. § 7B-1109 adjudicatory stage and the N.C.G.S. § 7B-1110 dispositional stage into one hearing, so long as the trial court applies the correct evidentiary standard at each stage and the trial court's orders associated with the termination action contain the appropriate standard-of-proof recitations."), *disc. review denied*, 362 N.C. 235, 659 S.E.2d 738 (2008).

We next address respondent's challenges to the trial court's findings of fact regarding Sarah's likelihood of adoption and her argument that the trial court abused its discretion in assessing Sarah's best interests.

In determining whether termination of parental rights is in the best interests of a juvenile:

> The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile. In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C.G.S. § 7B-1110(a) (2019). A trial court's best interests determination "is reviewed solely for abuse of discretion." *In re A.U.D.*, 373 N.C. at 6, 832 S.E.2d at 700 (citing *In re D.L.W.*, 368 N.C. 835, 842, 788 S.E.2d 162, 167 (2016)). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 6–7, 832 S.E.2d at 700–01 (modification omitted) (quoting *In re T.L.H.*, 368 N.C. 101, 107, 772 S.E.2d 451, 455 (2015)). "[O]ur appellate courts are bound by the trial courts' findings of fact where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." *In re Montgomery*, 311 N.C. 101, 110–11, 316 S.E.2d 246, 252–53 (1984).

On remand, the trial court amended its order terminating respondent's parental rights to include the following findings of fact regarding Sarah's likelihood of adoption:

> 4. There is a high likelihood of adoption once the juvenile can get stable, but she cannot be stable until she has closure regarding her relationship with her biological family. The juvenile needs permission to not feel guilty and to move forward and to allow herself to be loved by someone that can care for her appropriately.
>
> 5. Although the Juvenile struggles with transition, she is also in the process of stepping down from her current treatment program. When there are changes in her environment it causes the juvenile some stress and anxiety, which comes out in her behaviors.

6. The Juvenile has moderate mental health needs, based on a diagnosis of post-traumatic stress disorder and disruptive mood dysregulation disorder. The juvenile is extremely guarded. She is eleven years old and has endured years of injurious environment and neglect and exposure to substance abuse, domestic violence, and for her to be able to process that trauma that she has been through, she needs closure and as long as the biological family is in the picture, she feels split. Her loyalties are divided and she doesn't know how she should feel and she has expressed multiple times that it is her fault that she is in foster care.

7. The juvenile needs a little bit more stability before the conversation about adoption can occur. She has only been in this placement for a month and a half, and the juvenile and the foster parents need time to develop a bond before a discussion can be had. In addition, the Juvenile needs closure to allow for her to develop a bond because she is so guarded.

8. The plan to find the juvenile an adoptive home would be to start with the current placement and see if they are interested in keeping the juvenile. Once parents' rights are terminated, if there is not an identified adoptive home, CCDHS would complete adoption recruitment on behalf of the juvenile, including building a child profile, detailing the child's likes, dislikes, their needs, and it is submitted to NC Kids. NC Kids is a state website and also feeds into Adopt U.S. Kids, a national website to recruit for families. Pre-placement assessments for interested families would go to CCDHS and a team reviews them to determine which is the best placement for the child, and then the child would be placed in that home on a trial basis.

9. If an adoptive home is not located, the juvenile remains in CCDHS [custody] and they would continue to recruit to find an adoptive home for the juvenile. If the juvenile reaches the age of eighteen and is not adopted, the juvenile can transition into the LINKS program at CCDHS which

> helps teens transition into adulthood and develop necessary life skills.

Respondent first argues finding of fact four is erroneous. She contends the finding implies Sarah's only obstacle to stability was her relationship with her biological family, which is not supported by the evidence. She argues the evidence established that "closure" meant more than just severance from her biological family and included being able to process past trauma. She additionally contends the evidence regarding stability and closure for Sarah was only discussed in the context of whether termination of parental rights was in Sarah's best interests, and not specifically whether Sarah had a likelihood of adoption. Respondent further argues that without additional findings of fact as to what constitutes "stability" for Sarah and whether she would be able to obtain stability before reaching the age of majority, the likelihood of adoption is unknown.

Finding of fact four does not state that Sarah's relationship to her family was the *only* barrier to her ability to achieve stability in her life, but rather that severing the relationship was a necessary precondition to achieving it. The finding also does not suggest that "closure" for Sarah meant only the severance of parental rights. Finding of fact four is fully supported by testimony from the social worker, who testified, "the likelihood of adoption is high once we get [Sarah] stable, but she cannot be stable until she has closure." The social worker further testified:

> [Sarah] has endured years and years of an injurious environment and neglect and exposure to substance abuse,

> domestic violence, and for her to be able to process that trauma that she has been through, she needs closure. And as long as biological family are in the picture, . . . she's split and her loyalties are divided and she doesn't know how she should feel, and she's expressed to me multiple times that, "It is my fault that I'm in foster care. I should have never said anything." And so she needs that closure in order to . . . allow for her to develop a bond, because she's so guarded right now.

Furthermore, the trial court was not required to make findings of fact showing Sarah will attain the necessary stability to be adopted. *See, e.g., In re Norris*, 65 N.C. App. 269, 275, 310 S.E.2d 25, 29 (1983) ("It suffices to say that . . . a finding [of adoptability] is not required in order to terminate parental rights."), *cert. denied*, 310 N.C. 744, 315 S.E.2d 703 (1984). Section 7B-1110 does not require the trial court to set forth detailed findings establishing the benchmarks a traumatized child must meet to obtain the necessary stability to be adopted. The court had only to make findings of fact addressing Sarah's likelihood of adoption.

Respondent next contends finding of fact five minimizes Sarah's mental health and behavioral issues and creates an inaccurate perception that her conditions have improved enough to enable her to "step down" from her current therapeutic placement. Respondent argues there is no evidence Sarah was stepping down from her current treatment program, was only experiencing stress and anxiety, or was making progress toward her transition.

Respondent, however, ignores the social worker's testimony that Sarah was "in the process of stepping down from her current treatment program and I think that's

causing some stress and anxiety, which is coming out in her behavior." The social worker testified a more permanent and stable environment would help Sarah, and Sarah's current foster parents, who are participating in her therapeutic care, were willing to keep fostering her as she is stepped down to a lower level of care so that she does not have to make another disruptive transition. Contrary to respondent's interpretation, this finding does not state Sarah is only experiencing stress or indicate her progress in making the transition. The finding also does not minimize Sarah's mental health and behavioral issues and acknowledges her struggles with transition as a result of her issues.

Respondent also argues finding of fact six implies that Sarah's mental health diagnoses caused her guarded and conflicted behavior and that her mental health and behavioral issues will go away if parental rights are terminated. The finding that Sarah is "extremely guarded" holds no such implication. The statement is supported by testimony from the social worker and carries no improper implication merely because the relevant testimony followed the social worker's identification of Sarah's specific mental health diagnoses.

Respondent appears to suggest the trial court should have made additional findings regarding the nature of Sarah's disruptive behaviors. However, a trial court is only required to make findings of fact necessary to resolve material issues. *See, e.g., Carpenter v. Carpenter*, 225 N.C. App. 269, 271, 737 S.E.2d 783, 785 (2013) ("[T]he trial court need not make a finding as to every fact which arises from the evidence;

rather, the court need only find those facts which are material to the resolution of the dispute." (citation omitted)). The nature of Sarah's mental health and behavioral issues was not in dispute, and the trial court was not required to make findings on those issues.

Respondent further argues finding of fact seven takes the social worker's testimony out of context and creates an inaccurate impression that all Sarah needed to gain "stability" was termination of parental rights. We conclude the finding is fully supported by the social worker's testimony. The finding states that Sarah needs more stability before a "conversation about adoption can occur," not that stability will automatically cause Sarah to develop a bond with her potential adoptive parents. The trial court's finding merely indicates stability and closure will *assist* Sarah in attaining her permanent plan of adoption, not that adoption is guaranteed. We agree with respondent that there is no evidence the foster parents are open to adopting Sarah. The record instead establishes that Sarah needs more stability and closure before CCDHS initiates that conversation with Sarah and her foster parents.

Respondent also argues the trial court's finding of fact that it "accepted the [GAL's] court report into evidence, as it relates to the best interests of the child" is erroneous because it does no more than recite the evidence. Respondent takes issue with numerous statements in the report and the report's failure to discuss other aspects of the case. Respondent appears to believe the trial court's finding adopted the report's findings as its own, however, the finding simply acknowledges for the

record that the report had been admitted into evidence for dispositional purposes. The court did not adopt the report's findings as its own, and we do not treat the report's findings as anything more than evidence in the case.

We hold the above challenged findings of fact are supported by competent record evidence and are binding on appeal. *See Montgomery*, 311 N.C. at 110–11, 316 S.E.2d at 252–53. Respondent does not challenge the remaining dispositional findings of fact, and they are thus binding on appeal. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.").

Next, respondent argues the trial court did not comply with the remand instructions from the Court of Appeals, because its findings do not resolve what respondent contends is a conflict between the testimony of the social worker and the GAL over whether there is a "high likelihood" that Sarah will be adopted. Respondent asserts that the amended findings ignore the GAL's report altogether and, as argued above, are erroneous.

However, nothing in the remand order actually states that the two slightly different assessments are irreconcilable or determinative of whether termination of respondent's parental rights is in Sarah's best interests. The Court of Appeals remanded this matter for the trial court to address Sarah's likelihood of adoption, *see* N.C.G.S. § 7B-1110(a)(2) (2019), which it held was placed at issue due to testimony

from a social worker and from Sarah's GAL. *In re S.M.M.*, 2019 N.C. App. LEXIS at *13, 2019 WL 190200 at *5. The social worker's testimony that she thought "the likelihood of adoption is high once we get [Sarah] stable, but she cannot be stable until she has closure" and that "[Sarah] needs a little bit more stability before we can have that conversation [about adoption,]" is not contradicted by the GAL's written report, which stated "[t]he likelihood of adoption is good." *Id*. The amended findings set forth above find Sarah to have a high likelihood of adoption and, as discussed above, are supported by competent evidence. The findings therefore complied with the Court's remand instructions.

Respondent lastly argues the trial court abused its discretion in concluding termination of her parental rights is in Sarah's best interests. Respondent contends the court's findings do not support its conclusion and its conclusion is not the result of a reasoned decision because the court failed to include an analysis of Sarah's actual likelihood of adoption and possibility that termination of respondent's parental rights will render Sarah a "legal orphan."

However, the trial court's dispositional findings of fact on remand address all the relevant criteria required by N.C.G.S. § 7B-1110(a). The findings establish that Sarah has a likelihood of adoption only if she obtains stability in her life and closure with the traumas of her past, which cannot be obtained absent the termination of respondent's parental rights. The findings make clear that the trial court recognized Sarah may never achieve the necessary stability and closure to be adopted, but it is

well established that a likelihood of adoption is not necessary for a court to conclude termination of parental rights is in a juvenile's best interests. *See, e.g., Norris*, 65 N.C. App. at 275, 310 S.E.2d at 29.

The trial court's order shows a well-reasoned weighing of Sarah's adoptability and the obstacles thereto, along with her age, lack of appropriate bond with respondent, and need for permanency. Accordingly, we hold the trial court did not abuse its discretion in concluding that termination of respondent's parental rights was in Sarah's best interests, and we affirm the trial court's order.

AFFIRMED.