An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1468
NORTH CAROLINA COURT OF APPEALS

Filed: 19 August 2014

IN THE MATTER OF:

C.A. and B.A.                          Wake County
                                       Nos. 12 JT 137, 138

Appeal by Respondent-Father from order entered 3 June 2013 by Judge Margaret P. Eagles in District Court, Wake County. Appeal by Respondent-Father and Respondent-Mother from order entered 17 October 2013 by Judge Margaret P. Eagles in District Court, Wake County. Heard in the Court of Appeals 22 July 2014.

> *Office of the Wake County Attorney, by Roger A. Askew, for Petitioner-Appellee Wake County Human Services.*
>
> *Levine & Stewart, by James E. Tanner III, for Respondent-Appellant Father.*
>
> *Robert W. Ewing for Respondent-Appellant Mother.*
>
> *Ellis & Winters LLP, by James M. Weiss, for Guardian ad Litem.*

McGEE, Judge.

Respondent-Father and Respondent-Mother (together, "Respondents") appeal from an order terminating their parental

rights as to the minor children C.A. ("Cathy") and B.A. ("Beth").[1]  Respondent-Father separately appeals from an order entered 3 June 2013 ceasing reunification efforts with his daughter Cathy.  We affirm.

Wake County Human Services ("WCHS") filed a juvenile petition on 22 May 2012, alleging Cathy and Beth ("the children") to be abused and neglected juveniles.  Cathy, just two months old, had been diagnosed as suffering from a fracture in her foot and multiple fractured ribs, which doctors determined were caused by non-accidental means.  WCHS obtained non-secure custody of the children and placed them, pursuant to a safety plan, in the care of Cathy's paternal grandmother ("Cathy's grandmother").

The parties entered a memorandum of understanding on 25 May 2012, documenting the history of Respondent-Mother's involvement with WCHS, the injuries to Cathy, the services recommended for and agreed to by Respondents, and the services to be provided to the children. The parties also entered into stipulations of fact regarding Cathy's injuries; Respondent-Mother's prior history with WCHS, including that Respondent-Mother relinquished her

---

[1] Pseudonyms are used throughout to protect the identity of the children and for ease of reading.  Respondent-Father is the biological father of Cathy and is not related to Beth.  Beth's father is not a party to this appeal.

parental rights to three older children; and Respondent-Mother's history of substance abuse and "instability." After a hearing on 18 July 2012, and based in part on the stipulated facts, the trial court entered an order on 7 August 2012, adjudicating the children to be neglected juveniles and Cathy to also be an abused juvenile. The trial court continued custody of the children with WCHS and sanctioned their placement with Cathy's grandmother. The trial court directed WCHS to continue to make reasonable efforts to eliminate the need for placement of the children outside of their home, and ordered Respondents to comply with detailed case plans set forth in the order.

WCHS removed the children from the home of Cathy's grandmother in January 2013 and placed them in a licensed foster home. Cathy's grandmother sought to keep Cathy, who was her biological granddaughter, but stated she did not want to keep Beth in her home. Cathy's grandmother was not willing to participate in Beth's recommended in-home mental health therapy, and she also needed monthly respite from Cathy and Beth. Cathy's grandmother filed a motion to intervene and a complaint for custody of Cathy on 27 March 2013.

Respondent-Mother was incarcerated on charges of child abuse of Cathy, larceny, and aiding and abetting larceny.

Therefore, Respondent-Mother's ability to work on her case plan was delayed until February 2013. Shortly after starting work on her case plan, Respondent-Mother began missing parenting classes and failed a drug screen for marijuana. The failed drug screen constituted a violation of Respondent-Mother's conditions of probation, and she was incarcerated for twenty-four hours on 15 March 2013.

Respondent-Father did not understand why he had to participate in services ordered by the trial court, and indicated that he wanted Cathy's grandmother to be Cathy's caretaker. Respondent-Father did not consistently visit with Cathy following Cathy's removal from her grandmother's home, and he also missed an appointment for a substance abuse evaluation. Respondent-Father moved into his girlfriend's home, and he admitted the girlfriend's home was not suitable for Cathy.

Due to Respondents' inability to make progress on their case plans, the trial court entered an order on 3 June 2013 ceasing reunification efforts and setting the permanent plan for the children as adoption. That same day, the trial court entered an order denying Cathy's grandmother's motion to intervene. Respondent-Father filed notice of intent to preserve

his right to appeal from the order ceasing reunification efforts.

WCHS filed a motion to terminate Respondent-Father's parental rights as to Cathy, and Respondent-Mother's parental rights as to both Cathy and Beth on 9 July 2013. WCHS alleged grounds to terminate Respondent-Mother's parental rights based on neglect, failure to make reasonable progress to correct the conditions that led to the removal of the children from her care, and dependency. *See* N.C. Gen. Stat. § 7B-1111(a)(1), (2), (6) (2013). WCHS alleged grounds to terminate Respondent-Father's parental rights as to Cathy based on neglect, failure to legitimate the child, and failure to make reasonable progress to correct the conditions that led to the removal of Cathy from his care. *See* N.C. Gen. Stat. § 7B-1111(a)(1), (2), (5) (2013).

After a hearing on 10 September 2013, the trial court entered an order on 17 October 2013 terminating Respondents' parental rights. The trial court concluded that: (1) grounds existed to terminate Respondent-Mother's parental rights under N.C. Gen. Stat. § 7B-1111(a)(1), (2) and (6); (2) that grounds existed to terminate Respondent-Father's parental rights under N.C. Gen. Stat. § 7B-1111(a)(1) and (2); and (3) that termination of Respondents' parental rights was in the

children's best interests. Respondents filed timely notices of appeal from the trial court's termination order.

## I.

We first address Respondent-Father's argument that the trial court abused its discretion when it set adoption as the permanent plan for the children in its 3 June 2013 order that also ceased reunification efforts. Respondent-Father contends the trial court should have awarded custody or guardianship of Cathy to Cathy's grandmother. We find no abuse of discretion in the trial court's decision.

In setting a permanent plan for children, the trial court's goal is to "develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(a) (2011).[2] To accomplish this, the trial court may,

> appoint a guardian of the person for the juvenile pursuant to G.S. 7B-600 or make any disposition authorized by G.S. 7B-903 including the authority to place the child in the custody of either parent or any

---

[2] The North Carolina General Assembly repealed N.C. Gen. Stat. § 7B-907 and replaced it with N.C. Gen. Stat. § 7B-906.1 for juvenile actions filed or pending on or after 1 October 2013. *See* 2013 N.C. Sess. Laws 129, § 25, 41 (June 19, 2013). Because the trial court entered its permanency planning order, that is presently before this Court, in May 2013, we review its order under N.C. Gen. Stat. § 7B-907.

> relative found by the court to be suitable and found by the court to be in the best interest of the juvenile.

N.C. Gen. Stat. § 7B-907(c) (2011). N.C. Gen. Stat. § 7B-903 prioritizes placements of juveniles with a family member:

> In placing a juvenile in out-of-home care under this section, the court shall first consider whether a relative of the juvenile is willing and able to provide proper care and supervision of the juvenile in a safe home. If the court finds that the relative is willing and able to provide proper care and supervision in a safe home, then the court shall order placement of the juvenile with the relative unless the court finds that the placement is contrary to the best interests of the juvenile.

N.C. Gen. Stat. § 7B-903(a)(2)(c) (2013). We review a trial court's determination regarding the best interests of a child for an abuse of discretion. *In re Pittman*, 149 N.C. App. 756, 766, 561 S.E.2d 560, 567, *appeal dismissed and disc. review denied*, 356 N.C. 163, 568 S.E.2d 608, 609 (2002), *cert. denied sub nom. Harris-Pittman v. Nash County Dep't of Soc. Servs.*, 538 U.S. 982, 155 L. Ed. 2d 673 (2003). An abuse of discretion occurs when the trial court's challenged actions are "manifestly unsupported by reason." *In re R.B.B.*, 187 N.C. App. 639, 648, 654 S.E.2d 514, 521 (2007), *disc. review denied*, 362 N.C. 235, 659 S.E.2d 738 (2008).

> [W]hen a trial judge sits as both judge and

> juror, as he or she does in a non-jury proceeding, it is that judge's duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom[.]

*In re Whisnant*, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) (quotation marks omitted). This Court will not substitute its judgment on the weight of the evidence for that of the trial court.

The trial court granted custody of Cathy and Beth to WCHS and sanctioned the placement of the children with Cathy's grandmother, but the children were removed from the home of Cathy's grandmother in January 2013 and placed in a licensed foster home. **[R p. 78 FOF#8]** In an order from a placement review hearing held 3 April 2013, the trial court sanctioned the children's placement in the foster home and made several findings of fact as to why Cathy's placement with her grandmother was not in Cathy's best interests:

> Although [Cathy's grandmother] is able and willing to provide care and supervision of [Cathy] on a permanent basis, for the following reasons it is not in [Cathy's] best interests to be placed in [her grandmother's] home:
>
> a. [Cathy's grandmother] wants to keep her biological granddaughter, [Cathy], but has been vocal that she did not want to keep

[Beth] in her home;

    b. [Cathy's grandmother] was not willing to participate in the recommended in-home mental health therapy for [Beth];

    c. [Cathy's grandmother] indicated that she needed monthly respite from the children, which has been provided for both children since 2012. Providing respite on this frequent a basis is not usual protocol for relative or foster care placements;

    d. The two children have a very strong attachment to each other and it is in [Cathy's] best interest to be in the same placement with [Beth]. [Respondent-Mother] has expressed that she wants the children to be placed together, and WCHS has set a clear goal to have the children placed together, which is supported by the GAL.

    e. [Beth], who has some behavior issues was removed from [Respondent-Mother's] home before the age of two [and] then lived for several months with [Cathy's grandmother], who indicated that she was having difficulty in dealing with some of the child's behaviors. [Beth] has shown marked improvements with her behavior in the two months since placed in the foster home.

In its 3 June 2013 permanency planning order, the trial court, after hearing testimony on the placement of the children with Cathy's grandmother, re-adopted these findings and concluded that there had been no new developments or changes to this issue. The trial court set the permanent plan for Cathy as adoption and continued custody of Cathy with WCHS.

Respondent-Father argues that the trial court's ultimate conclusion not to place Cathy with her grandmother is an abuse of discretion because it arbitrarily chose preservation of Cathy's relationship with Beth over that with her grandmother. Respondent-Father also contends that the trial court's findings (b) and (e) relate only to Beth's relationship with Cathy's grandmother and have no bearing on Cathy's best interests. Additionally, Respondent-Father argues that, at the time of the hearing, Cathy was only ten months old and could not have had a strong attachment to Beth, and that Respondent-Mother's desire to keep the children together should not outweigh Respondent-Father's wish that Cathy live with her grandmother.

Evidence at the permanency planning hearing established that Cathy was deeply attached to Beth, and the goal of both WCHS and the children's guardian ad litem was to keep the children together. The trial court is permitted to conclude that maintaining the bond and relationship between Cathy and Beth outweighs that of the bond between Cathy's grandmother and Cathy. Moreover, the inability of Cathy's grandmother to provide for the care of both children without respite, and her unwillingness to provide the care needed by Beth, are certainly

relevant to any decision the trial court made regarding the permanent plan for both children.

While the trial court could have given greater weight to Respondent-Father's wishes or to the bond between Cathy and her grandmother, its decision not to do so does not amount to a manifest abuse of discretion. We hold the trial court's conclusion not to place Cathy with her grandmother, nor to adopt a permanent plan for Cathy of guardianship, nor to grant custody to Cathy's grandmother, does not amount to an abuse of discretion. Accordingly, we affirm the trial court's order ceasing reunification efforts between Respondent-Father and Cathy.

## II.

Next, we address Respondent-Father's argument that the trial court erred in concluding that grounds existed to terminate his parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). This Court reviews orders terminating parental rights for "whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re Shepard*, 162 N.C. App. 215, 221-22, 591 S.E.2d 1, 6 (citations and quotation marks omitted), *disc. review denied sub nom. In re D.S.*, 358 N.C.

543, 599 S.E.2d 42 (2004). A trial court's findings of fact that an appellant does not specifically dispute on appeal "are deemed to be supported by sufficient evidence and are binding on appeal." *In re M.D.*, 200 N.C. App. 35, 43, 682 S.E.2d 780, 785 (2009). However, "[t]he trial court's conclusions of law are fully reviewable *de novo* by the appellate court." *In re S.N.*, 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008) (quotation marks omitted), *aff'd per curiam*, 363 N.C. 368, 677 S.E.2d 455 (2009).

A trial court may terminate parental rights where

> [t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.

N.C. Gen. Stat. § 7B-1111(a)(2) (2013). "Willfulness" under § 7B-1111(a)(2) may be proven by showing "the respondent had the ability to show reasonable progress, but was unwilling to make the effort." *In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175, *disc. review denied*, 354 N.C. 218, 554 S.E.2d 341 (2001).

In the case before the Court, the trial court made numerous findings of fact regarding Respondent-Father's willful failure to make reasonable progress to correct the conditions that led to the removal of Cathy from the home. The trial court found that, in the initial adjudication and disposition order, Respondent-Father was ordered to: (1) consistently visit with Cathy; (2) obtain and maintain housing and employment sufficient for himself and Cathy; (3) complete a substance abuse evaluation and follow through with all recommendations; (4) complete a mental health evaluation and follow through with all recommendations; (5) complete a domestic violence treatment program and demonstrate learned skills; (6) complete a positive parenting class and demonstrate learned skills; (7) resolve all criminal matters and refrain from further criminal activity; and (8) maintain regular contact with his social worker. The trial court found that Respondent-Father had not consistently visited with Cathy, having only visited seven times out of the last twenty-eight possible visitations and only four times in the past nine months. The trial court further found that Respondent-Father, since the adjudication hearing, had lived with his girlfriend in a home that he had stated to the social worker would not be suitable for Cathy. The trial court also

found that, although Respondent-Father claimed he had employment, he had not provided pay stubs to verify his employment and had not provided any financial assistance for Cathy. Respondent-Father had also not completed a parenting class, mental health assessment, substance abuse assessment, or domestic violence program, as ordered. Additionally, since the adjudication hearing, Respondent-Father had been charged with possession of illegal substances. The charge was pending at the time of the termination hearing, and Respondent-Father testified that the charges would be dismissed if he completed a substance abuse class.

Respondent-Father concedes that he did very little of what the trial court ordered in its dispositional order and he does not challenge any of the trial court's findings of fact. The findings are thus binding on this Court. Rather, Respondent-Father argues he should not be required to comply with the case plan set forth by the trial court in the initial adjudication and disposition order because it does not address the conditions that led to the removal of Cathy from the home.

Respondent-Father, however, agreed in the 25 May 2012 memorandum of understanding that he was willing to follow the recommendations of WCHS to obtain a substance abuse and mental

health assessment and to maintain stable housing and employment. Moreover, Respondent-Father did not appeal from the trial court's adjudication and disposition order and, thus, is estopped from challenging the findings and conclusions made therein in this appeal. *See In re Wheeler*, 87 N.C. App. 189, 194, 360 S.E.2d 458, 461 (1987) ("The doctrine of collateral estoppel operates to preclude parties from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination.") (citation and quotation marks omitted)). Accordingly, the trial court did not err in measuring Respondent-Father's progress based upon the case plan outlined in the trial court's initial adjudication and disposition order.

We hold the trial court's findings of fact fully support its conclusion that Respondent-Father willfully left Cathy in foster care for more than twelve months without making reasonable progress toward correcting the conditions that led to Cathy's removal from the home. Despite agreeing to a case plan with WCHS and being repeatedly ordered to meet the conditions set forth in the initial adjudication and disposition order, Respondent-Father refused to comply with those requirements and instead insisted that Cathy be placed with her grandmother.

Accordingly, we hold the trial court did not err in concluding grounds existed to terminate Respondent-Father's parental rights as to Cathy pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). Because the trial court did not err in terminating Respondent-Father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), we need not address Respondent-Father's arguments regarding the ground of neglect. *In re P.L.P.*, 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005), *aff'd per curiam*, 360 N.C. 360, 625 S.E.2d 779 (2006).

### III.

In Respondent-Mother's appeal, she first argues the trial court abused its discretion when it failed to conduct, *sua sponte*, a hearing into whether a guardian ad litem (GAL) should have been appointed to represent her interests in this matter. Respondent-Mother contends that her history of serious mental health problems put the trial court on notice that she was either incompetent or that she had a diminished capacity and could not adequately act in her own interest. We disagree.

"A trial judge has a duty to properly inquire into the competency of a litigant in a civil trial or proceeding when circumstances are brought to the judge's attention, which raise a substantial question as to whether the litigant is *non compos*

*mentis*." *In re J.A.A.*, 175 N.C. App. 66, 72, 623 S.E.2d 45, 49 (2005). "'Whether the circumstances . . . are sufficient to raise a substantial question as to the party's competency is a matter to be initially determined in the sound discretion of the trial judge.'" *Id.* (quoting *Rutledge v. Rutledge*, 10 N.C. App. 427, 432, 179 S.E.2d 163, 166 (1971)). "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

At the time of the termination hearing, N.C. Gen. Stat. § 7B-1101.1(c) authorized the appointment of a GAL, "if the court determines that there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest." N.C. Gen. Stat. § 7B-1101.1(c) (2011). However, our General Assembly amended N.C.G.S. § 7B-1101.1(c), applicable to all cases pending on or filed after 1 October 2013, such that a trial court may now only appoint a GAL "for a parent who is incompetent in accordance with G.S. 1A-1, Rule 17." N.C. Gen. Stat. § 7B-1101.1(c) (2013); 2013 N.C. Sess. Laws 129, §§ 32, 41. Accordingly, because the trial court could no longer appoint a GAL for

Respondent-Mother based on diminished capacity, Respondent-Mother's argument in this regard is moot. *Cf. Davis v. Zoning Board of Adjustment of Union County*, 41 N.C. App. 579, 582, 255 S.E. 2d 444, 446 (1979) (holding that "all questions raised have been rendered moot by the amendments to the Union County Zoning Ordinance").

Under the amended version of N.C. Gen. Stat. § 7B-1101.1(c), Respondent-Mother would be entitled to the appointment of a GAL on remand only if she were found to be incompetent. An incompetent adult is defined as one "who lacks sufficient capacity to manage the adult's own affairs or to make or communicate important decisions concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition." N.C. Gen. Stat. § 35A-1101(7) (2013). While Respondent-Mother's mental health and substance abuse issues certainly negatively affected her personal life and ability to parent the children, we see no evidence in the record suggesting her problems resulted in a lack of capacity to manage her own affairs or to make or communicate important decisions.

Respondent-Mother attended a child planning conference at the beginning of the case and entered into a voluntary memorandum of understanding with WCHS regarding the issues of placement of the children, visitation with the children, and services for herself and the children. Respondent-Mother also signed stipulations to evidentiary facts to be used in the trial court's initial adjudication and disposition order. Respondent-Mother testified on her own behalf at the termination hearing and in the May 2013 permanency planning hearing. Nothing in Respondent-Mother's testimony suggests she was not competent to participate in either hearing. Moreover, the record establishes that Respondent-Mother knew what was expected of her in order for her to be reunited with her children; that she participated in some substance abuse treatment, mental health assessments and treatment, and parenting classes; however, she was unwilling to complete the necessary treatment and classes. Based on the foregoing, we hold the fact that the trial court did not inquire into Respondent-Mother's competency *sua sponte* does not amount to an abuse of discretion, and we overrule this argument.

Respondent-Mother also argues the trial court erred in concluding that grounds existed to terminate her parental rights based on dependency pursuant to N.C. Gen. Stat. § 7B-1111(a)(6).

Respondent-Mother has not, however, challenged the trial court's conclusions that grounds also existed to terminate her parental rights based on neglect and failure to make reasonable progress to correct the conditions that led to the removal of the children from her home pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2). The unchallenged grounds are sufficient to support the trial court's order terminating Respondent-Mother's parental rights, and we need not consider her arguments relating solely to the ground of dependency. *In re J.M.W.*, 179 N.C. App. 788, 791-92, 635 S.E.2d 916, 918-19 (2006). Accordingly, we affirm the trial court's order as to the termination of Respondent-Mother's parental rights as to the children.

For the reasons stated herein, we affirm the trial court's 3 June 2013 order ceasing reunification efforts and setting the children's permanent plan as that of adoption, and the trial court's 17 October 2013 order terminating Respondents' parental rights.

Affirmed.

Judges STEELMAN and ERVIN concur.

Report per Rule 30(e).