IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-252

Filed: 18 August 2020

Nash County, No. 16 JT 140

IN THE MATTER OF: J.T.C.

Appeal by Respondent from order entered 4 September 2018[1] by Judge John

M. Britt in Nash County District Court. Heard in the Court of Appeals 27 May 2020.

*Mark L. Hayes for petitioner-appellee.*

*Leslie Rawls for respondent-appellant.*

ARROWOOD, Judge.

Respondent-father, father of "Jeffrey,"[2] appeals from the trial court's order

granting the petition filed by Jeffrey's mother ("Petitioner") for the termination of his

parental rights. For the following reasons, we affirm.

I.      Background

---

[1] The record contains two versions of the trial court's order, both file-stamped on 31 August 2018. The first order was signed on the trial judge's behalf by an assistant clerk of court on 31 August 2018; the second was signed by the judge on 4 September 2018, four days after the purported filing date. Because N.C. Gen. Stat. § 1A-1, Rule 58 (2019) provides that "a judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court[,]" we deem the order entered on the date that all three requirements were satisfied. We also note Respondent-father's amended notice of appeal is timely given the 7 September 2018 date of service of the termination order.

[2] A pseudonym is used to protect the identity of the juvenile and for ease of reading.

Jeffrey was born in Nash County, North Carolina, in November 2010. Petitioner and Respondent-father never married but lived together with Jeffrey for a period after his birth.

On 8 June 2011, Petitioner obtained a domestic violence protective order ("DVPO") against Respondent-father after he threatened her and choked her until she lost consciousness. The trial court found Jeffrey had been exposed to the violence and granted Petitioner temporary custody for the duration of the DVPO, which expired on 7 June 2012.

Petitioner and Respondent-father temporarily reunited. Respondent-father was subsequently incarcerated. Following his release from prison in November 2014, Respondent-father engaged in additional domestic violence against Petitioner resulting in the entry of a second DVPO on 6 January 2015. The DVPO granted Petitioner temporary custody of Jeffrey until 7 April 2015 and expired on 7 July 2015. Petitioner and Respondent-father did not resume their relationship thereafter. Petitioner arranged any visits between Respondent-father and Jeffrey after the expiration of that DVPO. At Petitioner's invitation, Respondent-father came to Jeffrey's birthday party in November 2015, visited Jeffrey around Christmas at Wal-Mart in December 2015, and attended a birthday party in April 2016 for one of Jeffrey's friends for approximately three hours.

On 12 December 2016, Petitioner filed a petition in Nash County District Court to terminate Respondent-father's parental rights pursuant to Article 11 of Chapter 7B of the North Carolina General Statutes. After a hearing on 12 April 2018, the trial court adjudicated grounds for termination existed based on Respondent-father's neglect and willful abandonment of Jeffrey under N.C. Gen. Stat. § 7B-1111(a)(1) and (7) (2019). The court held a dispositional hearing on 2 August 2018 and further determined that terminating Respondent-father's parental rights was in Jeffrey's best interest. Respondent-father gave timely notice of appeal from the termination of parental rights order ("the termination order").

## II.     Discussion

### A.     Standard of Appellate Review

We employ a familiar two-part framework on appeal from an order terminating parental rights. "We review a trial court's adjudication under N.C. [Gen. Stat.] § 7B-1111 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.' " *Matter of E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)). "We review *de novo* whether a trial court's findings support its conclusions." *Matter of Z.D.*, 258 N.C. App. 441, 443, 812 S.E.2d 668, 671 (2018). With regard to disposition, " '[w]e review the trial court's conclusion that a termination of parental rights would be in the best interest of the child on an

abuse of discretion standard.'" *Matter of A.H.*, 250 N.C. App. 546, 565, 794 S.E.2d 866, 879 (2016) (quoting *In re R.B.B.*, 187 N.C. App. 639, 648, 654 S.E.2d 514, 521 (2007)). The trial court's dispositional findings under N.C. Gen. Stat. § 7B-1110(a) need only be supported by competent evidence. *See id.* at 565, 794 S.E.2d at 879-80; *see also In re Eckard*, 144 N.C. App. 187, 197, 547 S.E.2d 835, 841, *remanded for reconsideration on other grounds*, 354 N.C. 362, 556 S.E.2d 299 (2001).

For purposes of appellate review, findings of fact to which no exception is taken are binding. *In re H.S.F.*, 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). Furthermore, "erroneous findings unnecessary to the determination do not constitute reversible error" where the trial court's remaining findings independently support its conclusions of law. *In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006).

### B.     Respondent-father's Arguments on Appeal

#### 1.     Findings of Fact

Respondent-father challenges the following two findings of fact as not supported by the evidence:

> 21. Respondent[-father] has not shown adequate interest with regard to raising and supporting the minor child.
>
> 22. Respondent[-father] has not declared or shown love for the minor child throughout this proceeding.

He contends the hearing "transcript directly contradicts and undermines these findings."

Initially, we note the trial court's order does not divide or otherwise distinguish its adjudicatory findings from its dispositional findings. Moreover, the court purports to make all of its findings "based on clear, cogent, and convincing evidence[.]"

From our examination of the order, it appears the trial court arranged its findings of fact sequentially. Findings 1-8 establish the basis for the trial court's jurisdiction in the cause. Findings 9-12 are adjudicatory in nature, addressing Petitioner's asserted grounds for termination under N.C. Gen. Stat. § 7B-1111(a)(1) and (7). Findings 13-25 are dispositional, addressing the statutory criteria in N.C. Gen. Stat. § 7B-1110(a)(1)-(6) as a basis for determining Jeffrey's best interest. It thus appears the trial court did not rely on Findings 21 and 22 to support its adjudications, only its disposition.

Regardless of whether the contested findings are adjudicatory or dispositional, we find ample evidence to support Finding 21. At the adjudicatory hearing,[3]

---

[3] Findings made in support of an adjudication under N.C. Gen. Stat. § 7B-1111(a) must be based on evidence adduced at the adjudicatory stage of the proceeding. *See* N.C. Gen. Stat. § 7B-1109(e) (2019). Dispositional findings under N.C. Gen. Stat. § 7B-1110 may be based on evidence presented at either the adjudicatory or dispositional stage of the hearing. *See In re Blackburn*, 142 N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001) ("Evidence heard or introduced throughout the adjudicatory stage, as well as any additional evidence, may be considered by the court during the dispositional stage."); *see also In re R.B.B.*, 187 N.C. App. at 643-44, 654 S.E.2d at 518 (noting "a trial court may combine the N.C. [Gen. Stat.] § 7B-1109 adjudicatory stage and the N.C. [Gen. Stat.] § 7B-1110 dispositional stage into one hearing, so long as the trial court applies the correct evidentiary standard at each stage").

Petitioner testified Respondent-father had paid nothing toward Jeffrey's support in the preceding three years and had no contact with Jeffrey since attending an event at a skating rink at Petitioner's invitation in April 2016.

Petitioner described Respondent-father's conduct while they lived together with Jeffrey as follows:

> There was a lot of domestic violence. [Respondent-father] had a lot of drug issues. He was always using. He was never really home. I cannot really say that he supported his child. Even though we did stay in the same house. He was there (inaudible). He was not a good father figure to his child.

Petitioner also testified that although the initial DVPO issued in 2011 provided Respondent-father with the right to visit Jeffrey, Respondent-father did not exercise his visitation rights. Likewise, after the second DVPO expired on 7 July 2015, Respondent-father made no attempt to contact Petitioner to see Jeffrey or to provide support for the child. Respondent-father saw Jeffrey on just three occasions after 7 July 2015: at Jeffrey's birthday party in November 2015, on Christmas of 2015, and at the skating rink in April 2016. On each occasion, it was Petitioner who reached out to Respondent-father and invited him to see his son. Respondent-father did not bring any gifts for Jeffrey to these events or pay any amount toward the scheduled activities.

Petitioner affirmed Respondent-father had not seen Jeffrey or made any attempt to contact or provide support for the child in the eight months that preceded

her filing of the petition in this cause on 12 December 2016. Although Respondent-father's relatives contacted Petitioner asking to see Jeffrey after she filed her petition, they did not mention Respondent-father. Respondent-father's wife also attempted to contact Petitioner on Facebook, saying she and Respondent-father wanted to see Jeffrey, but did so only "a full seven months" after the petition was filed.

Respondent-father, his wife, and his aunt testified at the adjudicatory hearing and disputed aspects of Petitioner's testimony. It is well-established, however, that "[c]redibility, contradictions, and discrepancies in the evidence are matters to be resolved by the trier of fact, here the trial judge, and the trier of fact may accept or reject the testimony of any witness." *Smith v. Smith*, 89 N.C. App. 232, 235, 365 S.E.2d 688, 691 (1988) (citation omitted).

Moreover, Respondent-father acknowledged not having seen Jeffrey since April 2016 at the skating rink and having neither provided support for, nor "filed for custody" of, Jeffrey. Respondent-father's explanations for his inaction were belied by his own testimony and that of his witnesses. When asked why he had never sought custody of Jeffrey, for example, Respondent-father claimed he had no money for an attorney "[b]ecause at the time [he] didn't have a job." He later testified that he had been employed in his current full-time job for "[a]bout two years"—well before Petitioner filed to terminate his parental rights. Respondent-father also claimed he had been unable to contact Petitioner about Jeffrey because he did not know where

she lived, and because she frequently changed her phone number. He then testified that his "cousin actually stays two doors down from [Petitioner]." Respondent-father's wife subsequently described making "numerous" phone calls to Petitioner despite her changing phone number, as follows:

> Q. . . . [H]ow can you talk to her numerous times but you can't reach her because her phone number always changes?
>
> A. There is -- because when we would get the new number I would call. And no, she didn't really want to talk to me but you know, *(inaudible)* and wanted to be in his children's life -- and that -- so you know what, I'm going to call it. I'm going to ask to see [Jeffrey]. She did not particularly like the call but she was going to get it.

Respondent-father's exception to Finding 21 is overruled.

Respondent-father also challenges Finding 22, which states he "has not declared or shown love for the minor child through this proceeding." The hearing transcript shows Respondent-father expressly testified in reference to Jeffrey, "I love my son." While we construe the term "this proceeding" in Finding 22 as referencing the entire period since Petitioner filed her petition on 12 December 2016, we agree with Respondent-father that the trial court's finding is erroneous in light of his testimony. Nevertheless, because the trial court's remaining findings independently support its conclusions of law, we find no reversible error and disregard this finding for purposes of our review. *See In re T.M.*, 180 N.C. App. at 547, 638 S.E.2d at 240.

2.    Adjudication under N.C. Gen. Stat. § 7B-1111(a)(7)

Respondent-father claims the evidence and the trial court's findings of fact do not support its adjudication of grounds to terminate his parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(7), which authorizes termination when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition[.]" N.C. Gen. Stat. § 7B-1111(a)(7).  Our Supreme Court has provided the following guidance for applying this provision:

> We have held that [a]bandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child.  It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child.

*Matter of E.H.P.*, 372 N.C. at 393, 831 S.E.2d at 52 (first alteration in original) (internal citations and quotation marks omitted).

The dispositive six-month period in this case is 12 June 2016 to 12 December 2016.  The trial court made the following findings relevant to its adjudication under N.C. Gen. Stat. § 7B-1111(a)(7):[4]

---

[4] Respondent-father asserts that "Findings of fact ## 18, 19, 20, 21, and 22 are . . . insufficient to support an adjudication of abandonment."  As previously discussed, we believe these findings were made for dispositional purposes under N.C. Gen. Stat. § 7B-1110(a) in assessing whether terminating Respondent-father's parental rights is in Jeffrey's best interest.  Therefore, we do not consider them in reviewing the court's adjudication under N.C. Gen. Stat. § 7B-1111(a)(7).  *Cf. Matter of A.R.A.*, 373 N.C. 190, 195, 835 S.E.2d 417, 421 (2019) ("[W]e limit our review of challenged findings to those that are necessary to support the district court's determination that this ground [for termination] existed . . . .").

10. Petitioner has proven through clear, cogent, and convincing evidence that, pursuant to [N.C. Gen. Stat.] §[ ]7B-1111(a)(7), the Respondent[-father] has willfully neglected and abandoned the minor child for at least six (6) consecutive months immediately preceding the filing of the Petition.

11. Respondent[-father] has had no contact with the minor child since an April 9, 2016 birthday party at Sky-Vue Skateland in Rocky Mount and has not provided any form of support whether in cash or in kind, medical, or otherwise for the child since at least December 26, 2015.

12. In the six months immediately preceding the filing of the Petition, the Respondent[-father] did [not] have any contact or communication with the minor child nor did he directly attempt to contact the minor child or provide the minor child any care, supervision, support, discipline, gift, card, or letter; Respondent[-father] has not met any need of the minor child and has been absent from the minor child's life since on or about December 26, 2015.

To the extent Respondent-father does not except to the trial court's findings of fact, specifically Findings 11 and 12, they are binding on appeal. *In re H.S.F.*, 182 N.C. App. at 742, 645 S.E.2d at 384.

We agree with Respondent-father that Finding 10 amounts to a conclusion of law, inasmuch as it declares Petitioner's success in establishing the statutory ground for termination in N.C. Gen. Stat. § 7B-1111(a)(7) under the applicable burden of proof in N.C. Gen. Stat. § 7B-1109(f). *See Matter of Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675-76 (1997) (reasoning that a "determination of neglect requires

the application of the [relevant] legal principles . . . and is therefore a conclusion of law."); *see also In re S.Z.H.*, 247 N.C. App. 254, 261-62, 785 S.E.2d 341, 347 (2016) (characterizing adjudication of abandonment under (a)(7) as a conclusion of law). The trial court's classification of its own determination as a finding or conclusion does not govern our analysis. *See State v. Icard*, 363 N.C. 303, 308, 677 S.E.2d 822, 826 (2009) (treating as conclusions of law those findings of fact which resolved a question of law). We treat Finding 10 as a conclusion of law and apply the appropriate *de novo* standard of review. *See id.* ("While we give appropriate deference to the portions of Findings No. 37 and 39 that are findings of fact, we review de novo the portions of those findings that are conclusions of law.").

Based on its findings of fact, the court reached the following conclusions of law:

> 3. The Respondent[-father] . . . through testimony and evidence presented at this proceeding, is determined to have willfully abandoned the minor child, [Jeffrey], for at least six consecutive months immediately preceding the filing of the petition pursuant to N.C. [Gen. Stat.] § 7B-1111(a)(7).
>
> 4. Respondent[-father]'s conduct manifests a willful determination to forego all parental duties and obligations toward said minor child.
>
> 5. There is sufficient, clear, cogent and convincing evidence to terminate the parental rights of [Respondent-father] to [Jeffrey] pursuant to N.C. [Gen. Stat.] § 7B-1111.

As with ostensible Finding 10, we view Conclusion 4 as more in the nature of a finding of fact. Our courts have held the willfulness of parent's conduct to be a question of fact rather than law. *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962). Conclusion 4 thus amounts to an ultimate finding by the trial court, based on inferences drawn from the evidence and Respondent-father's objective behavior toward Jeffrey. Because Respondent-father has challenged Conclusion 4 on appeal, we review it under the appropriate standard. *See State v. Burns*, 287 N.C. 102, 110, 214 S.E.2d 56, 61-62 (1975).

Respondent-father takes no exception to the trial court's statements in Findings 11 and 12 that he had no contact with Jeffrey after 9 April 2016; that he provided no support of any kind for Jeffrey "since at least December 26, 2015"; and that he did not "directly attempt to contact [Jeffrey] or provide the minor child any care, supervision, support, discipline, gift, card, or letter . . . and has been absent from the minor child's life since on or about December 26, 2015." We find the evidence, as reflected in these findings, further supports the trial court's ultimate finding in Conclusion 4 that Respondent-father's conduct during the critical six months evinces a "willful determination to forego all parental duties and obligations toward [Jeffrey]." Taken together, these findings in turn support the trial court's conclusion of law that Respondent-father "willfully abandoned the minor child, [Jeffrey], for at least six consecutive months immediately preceding the filing of the

petition pursuant to N.C. [Gen. Stat.] §[ ]7B-1111(a)(7)." *See Matter of E.H.P.*, 372 N.C. at 394, 831 S.E.2d at 53 (upholding adjudication of willful abandonment where, "[b]y his own admission, respondent had no contact with his children during the statutorily prescribed time period . . . [and] made no effort to have any form of involvement with the children for several consecutive years following the entry of the Temporary Custody Judgment" awarding custody to the petitioner).

Unlike the cases cited by Respondent-father, the evidence shows no effort by Respondent-father during the relevant six-month period to have any form of contact or communication with Jeffrey, or to provide for his support in any manner. In *In re S.Z.H.*, "respondent called Sally during roughly half of the relevant six-month period . . . and asked petitioner if he could attend Sally's birthday party[.]" 247 N.C. App. at 261, 785 S.E.2d at 346. "[E]ven during the last half of the six-month period, the evidence tended to show that respondent attempted to communicate with Sally but petitioner stopped allowing him to contact her." *Id.* at 261, 785 S.E.2d at 346-47. Similarly in *Matter of D.M.O.*, the trial court's findings were held insufficient to support an adjudication of abandonment because they failed to resolve conflicts in the evidence about "whether and to what extent respondent-mother called, texted, and mailed letters during the relevant period; whether and to what extent respondent-mother was able to participate in exercising parental duties on account of her periodic incarceration at multiple jails; and whether and to what extent

petitioner-father hindered respondent-mother from communicating with [the juvenile] or exercising visitation[.]" 250 N.C. App. 570, 580, 794 S.E.2d 858, 866 (2016). The facts *sub judice* show no similar efforts by Respondent-father toward Jeffrey and no hindrance to Respondent-father akin to the respondent-parent's incarceration in *Matter of D.M.O.* during the six months at issue.

We are not persuaded by Respondent-father's suggestion that the efforts made by his wife and relatives to contact Petitioner foreclose an adjudication of willful abandonment under N.C. Gen. Stat. § 7B-1111(a)(7). Where, as here, a parent has the means to undertake personal efforts toward maintaining a relationship with his child, he will not be absolved of his parental responsibilities by the efforts of third parties. The evidence shows Respondent-father had the ability to contact Petitioner directly about Jeffrey but made no effort to do so. Respondent-father also provided no financial support for Jeffrey despite having full-time employment throughout the six-month period from 12 June 2016 to 12 December 2016. Accordingly, we hold the trial court properly adjudicated grounds for terminating Respondent-father's parental rights based on willful abandonment under N.C. Gen. Stat. § 7B-1111(a)(7).

Because we affirm the trial court's adjudication under N.C. Gen. Stat. § 7B-1111(a)(7), we need not review the second ground for termination found by the court under N.C. Gen. Stat. § 7B-1111(a)(1). *Matter of E.H.P.*, 372 N.C. at 395, 831 S.E.2d at 53.

C. Disposition under N.C. Gen. Stat. § 7B-1110(a)

Respondent-father also claims the trial court abused its discretion at the dispositional stage of the proceeding by concluding that termination of his parental rights is in Jeffrey's best interest. " 'A ruling committed to a trial court's discretion . . . will be upset only upon a showing that it was so *arbitrary* that it could not have been the result of a reasoned decision.' " *In re S.C.R.*, 198 N.C. App. 525, 536, 679 S.E.2d 905, 911-12 (2009) (emphasis in original) (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).

"Once a trial court has concluded during the adjudication phase that grounds exist for termination of parental rights, it must decide in the disposition phase whether termination is in the best interests of the child." *In re D.R.F.*, 204 N.C. App. 138, 141, 693 S.E.2d 235, 238 (2010) (citing *In re Mills*, 152 N.C. App. 1, 7, 567 S.E.2d 166, 169-70 (2002)). Under N.C. Gen. Stat. § 7B-1110(a),

> The court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile. In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2019). Although the court must consider each of these factors, written findings are required only "if there is 'conflicting evidence concerning' the factor, such that it is 'placed in issue by virtue of the evidence presented before the trial court[.]'" *In re H.D.*, 239 N.C. App. 318, 327, 768 S.E.2d 860, 866 (2015) (quoting *In re D.H.*, 232 N.C. App. 217, 221 n.3, 753 S.E.2d 732, 735 n.3 (2014)).

The trial court made the following findings under N.C. Gen. Stat. § 7B-1110(a)(1)-(6):

13. The minor child is seven (7) years old . . . .

14. The likelihood that the minor child will be adopted is good; Petitioner's husband's testimony indicates his desire to adopt the minor child and the minor child indicated that he wished to be adopted by Petitioner's husband.

15. That the termination of parental rights will aid in the accomplishment of the permanent plan for the minor child; the adoption of the minor child by Petitioner's husband will provide needed emotional and financial stability and ensure the juvenile's continued positive growth and development that has been fostered in the juvenile's current home setting with Petitioner and her husband.

16. That the bond between the minor child and the Respondent[-father] is poor, with the minor child having very little recollection of Respondent[-father].

17. The quality of the relationship between the minor child and the proposed adoptive parent is good; the minor child and the proposed adoptive parent have a strong familial bond, enjoy similar activities, and spend a great deal of time together; the proposed adoptive parent has provided the minor child with continued emotional and financial support in a parental role over approximately the last two (2) years.

18. The Respondent[-father] has a lengthy history of assaultive behavior against the Petitioner Mother.

19. The Respondent[-father] has been involved in criminal activity for the majority of the minor child's life and has a lengthy criminal record including current pending criminal charges.

20. Both Respondent[-father] and his wife have numerous current positive references to alcohol and drugs in their social media postings.

21. Respondent[-father] has not shown adequate interest with regard to raising and supporting the minor child.

22. Respondent[-father] has not declared or shown love for the minor child throughout this proceeding.

23. It is in the best interest of [Jeffrey] that the parental rights of [Respondent-father] for said minor child, be terminated based on the foregoing findings of fact.

Having previously addressed Respondent-father's challenges to Findings 21 and 22, we disregard Finding 22 to the extent it fails to account for Respondent-father's

testimony that he loves Jeffrey. There is ample support in the trial court's remaining findings to support its conclusions of law, such that the trial court's ruling was not "so *arbitrary* that it could not have been the result of a reasoned decision." *In re S.C.R.*, 198 N.C. App. at 536, 679 S.E.2d at 911-12 (emphasis in original) (citation and internal quotation marks omitted). Accordingly, the trial court did not abuse its discretion. We further note Finding 23 is actually a conclusion of law, and review it accordingly. *See Helms*, 127 N.C. App. at 510, 491 S.E.2d at 675 (internal citations omitted) ("any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law.").

Respondent-father does not dispute the evidentiary support for Findings 13-20, which address each of the factors in N.C. Gen. Stat. § 7B-1110(a). He contends a portion of Finding 15 is erroneous because it refers to Jeffrey's "permanent plan"—a feature only of proceedings initiated by a county director of social services under Article 4 of Chapter 7B. *See* N.C. Gen. Stat. §§ 7B-401.1, -906.1, -906.2 (2019). We agree that Jeffrey has no "permanent plan" as that term is defined in N.C. Gen. Stat. § 7B-906.2, and that portion of Finding 15 is thus erroneous. Nevertheless, we do not believe this amounts to an abuse of discretion.

In viewing the trial court's order as a whole, it becomes clear that the one-time mention of a permanent plan appears to simply be an oversight. Other than in Finding 15, the trial court makes no reference to the existence of a permanent plan

or the involvement of DSS. In addition, while Finding 15 begins with a brief mention of a permanent plan, the bulk of it is devoted to a discussion of the benefits of adoption of the minor child by petitioner's husband, which the trial court is allowed to consider as "any relevant consideration" in determining the best interests of the minor child. *See* N.C. Gen. Stat. § 7B-1110(a)(6). This Court has said that "erroneous findings unnecessary to the determination do not constitute reversible error" where the trial court's remaining findings independently support its conclusions of law. *In re T.M.*, 180 N.C. App. at 547, 638 S.E.2d at 240. *See also In re B.W.*, 190 N.C. App. 328, 333, 665 S.E.2d 462, 465 (2008) (disregarding the trial court's erroneous finding because "we d[id] not believe that the court's unsupported finding on this issue was necessary to its disposition."). As with Finding 22, in light of the ample support in the trial court's remaining findings which support its conclusions of law, we find no abuse of discretion.

Finally, Respondent-father's assertion that Findings 18-20 do not support the trial court's adjudication of neglect or abandonment under N.C. Gen. Stat. § 7B-1111(a) has no bearing on our review of the court's dispositional determination under N.C. Gen. Stat. § 7B-1110(a). We are satisfied Respondent-father's history of domestic violence toward Jeffrey's mother, his lengthy criminal record and pending charges, and his ongoing use of impairing substances with his current wife constitute "relevant consideration[s]" for purposes of N.C. Gen. Stat. § 7B-1111(a)(6).

### III.    Conclusion

We thus find no abuse of discretion by the trial court in concluding Jeffrey's best interests will be served by termination of Respondent-father's parental rights. The trial court's findings show its consideration of the statutory factors in N.C. Gen. Stat. § 7B-1110(a) and provide sound reasons for its ultimate decision.  Although Respondent-father attested to his desire to establish a relationship with Jeffrey, a reasonable fact-finder could conclude Jeffrey's well-being is better served by freeing him to be adopted by his stepfather.  Accordingly, we affirm the order of the trial court.

AFFIRMED.

Judge INMAN concurs.

Judge MURPHY concurs in the result in part and dissents in part by separate opinion.

MURPHY, Judge, concurring in the result in part and dissenting in part.

Respondent-father appeals from the trial court's order granting the petition for termination of his parental rights. As a result of an erroneous finding of fact and a misapprehension of law, we should vacate the trial court's order and remand for further dispositional proceedings consistent with that holding.

## **BACKGROUND**

Jeffrey was born in Wilson County in 2010. Petitioner and Respondent-father never married but lived together with Jeffrey for a period after his birth.

On 8 June 2011, Petitioner obtained a domestic violence protective order ("DVPO") against Respondent-father after he threatened her and choked her until she lost consciousness. The DVPO found Jeffrey had been exposed to the violence and granted Petitioner temporary custody for the duration of the DVPO, which expired on 7 June 2012.

Petitioner and Respondent-father temporarily reunited. Respondent-father was subsequently incarcerated. On 6 January 2015, following Respondent-father's release from prison in November 2014, a second DVPO was entered based on an additional incident of domestic violence against Petitioner. The DVPO granted Petitioner temporary custody of Jeffrey until 7 April 2015 and expired on 7 July 2015. Petitioner and Respondent-father did not resume their relationship thereafter. Petitioner arranged any visits between Respondent-father and Jeffrey after the expiration of that DVPO. At Petitioner's invitation, Respondent-father came to

*Murphy, J., concurring in the result in part and dissenting in part*

Jeffrey's birthday party in November 2015, visited Jeffrey at a Christmas visit at Wal-Mart in December 2015, and attended a birthday party in April 2016 for one of Jeffrey's friends for approximately three hours.

On 12 December 2016, Petitioner filed in Nash County District Court to terminate Respondent-father's parental rights pursuant to Article 11 of Chapter 7B of the North Carolina General Statutes. *See, e.g.*, N.C.G.S. §§ 7B-1100-1104 (2017). After a hearing on 12 April 2018, the trial court adjudicated grounds for termination based on Respondent-father's neglect and willful abandonment of Jeffrey under N.C.G.S. § 7B-1111(a)(1) and (a)(7). The trial court held a dispositional hearing on 2 August 2018 and determined that terminating Respondent-father's parental rights was in Jeffrey's best interest. *See* N.C.G.S. § 7B-1110(a) (2019). Respondent-father gave timely notice of appeal from the termination of parental rights order ("the termination order").

## ANALYSIS

### A. Standard of Review

"A termination of parental rights proceeding consists of two phases. In the adjudicatory stage, the petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C.[G.S.] § 7B-1111 exists." *In re J.W.*, 173 N.C. App. 450, 470-71, 619 S.E.2d 534, 548 (2005) (quoting *In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002)), *aff'd*, 360 N.C. 361, 625 S.E.2d 780 (2006). "Upon determining that one or more of the grounds

*Murphy, J., concurring in the result in part and dissenting in part*

for terminating parental rights exist, the court moves to the disposition stage to determine whether it is in the best interests of the child to terminate the parental rights." *Id.* at 471, 619 S.E.2d at 548 (quoting *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 615 (1997)). "We review whether the trial court"s findings of fact are supported by clear and convincing evidence and whether the findings of fact support the conclusions of law." *Id.* (quoting *Anderson*, 151 N.C. App. at 97, 564 S.E.2d at 602). "We review *de novo* whether a trial court's findings support its conclusions." *In re Z.D.*, 258 N.C. App. 441, 443-44, 812 S.E.2d 668, 671 (2018).

With regard to disposition, "[w]e review the trial court's conclusion that a termination of parental rights would be in the best interest of the child on an abuse of discretion standard." *In re A.H.*, 250 N.C. App. 546, 565, 794 S.E.2d 866, 879 (2016) (quoting *In re R.B.B.*, 187 N.C. App. 639, 648, 654 S.E.2d 514, 521 (2007)). "All dispositional orders of the trial court in abuse, neglect and dependency hearings must contain findings of fact based upon the credible evidence presented at the hearing. If the trial court's findings of fact are supported by competent evidence, they are conclusive on appeal." *In re Eckard*, 144 N.C. App. 187, 197, 547 S.E.2d 835, 841, *remanded for reconsideration on other grounds*, 354 N.C. 362, 556 S.E.2d 299 (2001) (internal citation omitted).

For purposes of appellate review, findings of fact to which no exception are taken are binding. *In re H.S.F.*, 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007); *see also In re E.H.P.*, 372 N.C. 388, 395, 831 S.E.2d 49, 54 (2019) (holding that when

3

*Murphy, J., concurring in the result in part and dissenting in part*

"Respondent [did] not challenge[ certain] findings, . . . they are therefore binding on appeal"). However, "we are not at liberty to speculate as to the precise weight the trial court gave to [erroneous findings of fact]." *In re L.C.*, 253 N.C. App. 67, 79, 800 S.E.2d 82, 91 (2017) (internal marks and citations omitted). Further, "our inability to determine the weight that the trial court assigned to . . . erroneous findings of facts" may require reversal and remand when considering the trial court's "use of these [erroneous] findings to support the apparent conclusions of law[.]" *Id.* (quoting *Alvarez v. Alvarez*, 134 N.C. App. 321, 327, 517 S.E.2d 420, 424 (1999)).

## B. Respondent-father's Arguments on Appeal

### 1. Findings of Fact

I agree with the Majority that, as an initial matter, the termination order does not divide or otherwise distinguish its adjudicatory findings from its dispositional findings. Moreover, the trial court purports to make all of its findings "based on clear, cogent, and convincing evidence[.]"

As the Majority notes, after examining the termination order, the trial court arranged its findings of fact sequentially. I agree with the Majority that Findings of Fact 1 through 8 establish the basis for the trial court's jurisdiction in the cause and that Findings of Fact 9 through 12 are adjudicatory in nature, addressing Petitioner's asserted grounds for termination under N.C.G.S. § 7B-1111(a)(1) and (a)(7). Findings of Fact 13 through 22 are dispositional, addressing the statutory criteria in N.C.G.S. § 7B-1110(a)(1)-(6) as a basis for determining Jeffrey's best interest.

4

IN RE J.T.C.

*Murphy, J., concurring in the result in part and dissenting in part*

However, I disagree with the Majority's characterization of Findings of Fact 21, 24, and 25. In its initial characterization of the findings, the Majority does not characterize Finding of Fact 23 as a conclusion of law, which it is, but does so in its analysis of the trial court's disposition. Unlike the Majority's categorization of Finding of Fact 21 as only dispositional in nature, Finding of Fact 21 was also adjudicatory in nature, again addressing Petitioner's asserted grounds for termination under N.C.G.S. § 7B-1111(a)(1) and (a)(7). Further examination of the termination order shows the trial court relied on Finding of Fact 21 to support its adjudication, as well as its disposition. I address Findings of Fact 23 to 25, which actually amount to Conclusions of Law, later in my analysis.

In addition to other challenges addressed throughout this opinion, Respondent-father challenges the following two Findings of Fact as not supported by clear and convincing evidence:

> 21. [Respondent-father] has not shown adequate interest with regard to raising and supporting [Jeffrey].

> 22. [Respondent-father] has not declared or shown love for [Jeffrey] throughout this proceeding.

He contends the hearing "transcript directly contradicts and undermines these findings."

Regardless of whether the contested findings are adjudicatory or dispositional, I agree with the Majority that there is ample evidence to support Finding of Fact 21.

5

IN RE J.T.C.

*Murphy, J., concurring in the result in part and dissenting in part*

At the adjudicatory hearing,[5] Petitioner testified Respondent-father had paid nothing toward Jeffrey's support in the preceding three years and had no contact with Jeffrey since attending an event at a skating rink at Petitioner's invitation in April 2016.

Petitioner described Respondent-father's conduct while they lived together from 2010 to 2015 with Jeffrey as follows:

> There was a lot of domestic violence. [Respondent-father] had a lot of drug issues. He was always using. He was never really home. I cannot really say that he supported his child. Even though we did stay in the same house. He was there (inaudible). He was not a good father figure to his child.

While this testimony provided some evidence concerning whether Respondent-father "neglected the juvenile" as to adjudication under N.C.G.S. § 7B-1111(a)(1), the time period discussed in the testimony did not fall into the applicable date range to determine whether Respondent-father "willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion" under N.C.G.S. § 7B-1111(a)(7). N.C.G.S. § 7B-1111(a)(7) (2019).

---

[5] As the Majority correctly states, findings made in support of an adjudication under N.C.G.S. § 7B-1111(a) must be based on evidence adduced at the adjudicatory stage of the proceeding. *See* N.C.G.S. § 7B-1109 (2019). Dispositional findings under N.C.G.S. § 7B-1110 may be based on evidence presented at either the adjudicatory or dispositional stage of the hearing. *See In re Blackburn*, 142 N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001); *see also In re R.B.B.*, 187 N.C. App. 639, 643-44, 654 S.E.2d 514, 518 (2007) (noting "a trial court may combine the N.C.G.S. § 7B-1109 adjudicatory stage and the N.C.G.S. § 7B-1110 dispositional stage into one hearing, so long as the trial court applies the correct evidentiary standard at each stage").

6

IN RE J.T.C.

*Murphy, J., concurring in the result in part and dissenting in part*

The trial court reviewed conflicting evidence concerning Respondent-father's attempts to see Jeffrey during the applicable time period before the petition in this cause on 12 December 2016. Petitioner testified that, although the initial DVPO, issued in 2011, provided Respondent-father with the right to visit Jeffrey, Respondent-father did not exercise his visitation rights, and made no attempt to contact Petitioner to see Jeffrey or to provide for his support after the second DVPO expired on 7 July 2015. However, Respondent-father testified to attempting to contact Petitioner through his family members to avoid conflict. Respondent-father also testified that Petitioner's invitations to visit with Jeffrey came with very short notice, and that "every time [Petitioner] invited me and I could be there I was there." At Petitioner's invitation, Respondent-father saw Jeffrey on three occasions after 7 July 2015: at Jeffrey's birthday party in November 2015, during Christmas of 2015, and at the skating rink in April 2016.

The testimony of Petitioner evidenced that Respondent-father had not seen Jeffrey or made any attempt to contact or provide support for the child in the eight months that preceded her filing of the petition in this cause on 12 December 2016. However, Respondent-father testified that, prior to the filing of that petition, he attempted to contact Petitioner to set up a visit with Jeffrey in the months prior to 12 December 2016. Petitioner acknowledged that Respondent-father's relatives contacted her asking to see Jeffrey, but that they did not mention Respondent-father. Respondent-father's wife also attempted to contact Petitioner on Facebook, saying

7

*Murphy, J., concurring in the result in part and dissenting in part*

she and Respondent-father wanted to see Jeffrey, but did so after the petition was filed.

Respondent-father, his wife, and his aunt testified at the adjudicatory hearing and disputed aspects of Petitioner's testimony. Despite the dispute, "[c]redibility, contradictions, and discrepancies in the evidence are matters to be resolved by the trier of fact, here the trial judge, and the trier of fact may accept or reject the testimony of any witness." *Smith v. Smith*, 89 N.C. App. 232, 235, 365 S.E.2d 688, 691 (1988).

Further, Respondent-father acknowledged both not having seen Jeffrey since April 2016 at the skating rink and not having provided support for Jeffrey. Respondent-father's explanations for his inaction were at times contradicted by his own testimony and that of his witnesses. When asked why he had never sought custody of Jeffrey, for example, Respondent-father claimed he had no money for an attorney "[b]ecause at the time [he] didn't have a job." At the hearing on 12 April 2018, Respondent-father testified that he had been employed in his current full-time job for "[a]bout two years"—well before Petitioner filed to terminate his parental rights on 12 December 2016. Respondent-father also claimed he had experienced difficulty contacting Petitioner about Jeffrey because he did not know where she lived, and because she frequently changed her phone number. He also testified that "if I tried to get in touch with her every time I do talk to her she threatens to call the law on me or tries to put me in jail." He then testified that his "cousin actually stays

*Murphy, J., concurring in the result in part and dissenting in part*

two doors down from [Petitioner]," but that he didn't "know where she lives . . . [b]ecause . . . I ain't never been to his house." On cross examination, Respondent-father's wife subsequently described making "numerous" phone calls to Petitioner despite her changing phone number, as follows:

> [Petitioner's Attorney:] . . . [H]ow can you talk to her numerous times but you can't reach her because her phone number always changes?
>
> [Respondent-father's wife:] There is -- because when we would get the new number I would call. And no, she didn't really want to talk to me but you know, (inaudible) and wanted to be in his children's life -- and that -- so you know what, I'm going to call it. I'm going to ask to see [Jeffrey]. She did not particularly like the call but she was going to get it.

Finding of Fact 21 is based on competent evidence.

Since I treat Finding of Fact 22 as dispositional in nature, I address Finding of Fact 22 in my analysis of the trial court's disposition under N.C.G.S. § 7B-1110(a).

**2. Adjudication of Neglect**

Instead of conducting an analysis of the trial court's adjudication of abandonment under N.C.G.S. § 7B-1111(a)(7), as the Majority did, I would conduct an analysis of Respondent-father's neglect of Jeffrey under N.C.G.S. § 7B-1111(a)(1). Respondent-father claims the evidence and the trial court's findings of fact do not support its adjudication of grounds to terminate his parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), which authorizes termination when "[t]he parent has . . . neglected the juvenile . . . within the meaning of [N.C.]G.S. [§] 7B-101." N.C.G.S §

9

7B-1111(a)(1) (2019). N.C.G.S. § 7B-101(15) defines a neglected juvenile as "[a]ny juvenile less than 18 years of age . . . whose parent . . . does not provide proper care, supervision, or discipline[,] or who has been abandoned[.]" N.C.G.S. § 7B-101(15) (2019).

The trial court made the following findings relevant to its adjudication under N.C.G.S. § 7B-1111(a)(1):[6]

> 9. Petitioner has proven through clear [] and convincing evidence that, pursuant to [N.C.]G.S. [§ ]7B-1111(a)(1), [Respondent-father] has neglected [Jeffrey] in accordance with [N.C.]G.S. [§ ]7b-101 inasmuch as, [Respondent-father] has not provided any care, supervision, support, or discipline for [Jeffrey] since on or about [26 December 2015.]
>
> 11. [Respondent-father] has had no contact with [Jeffrey] since an [9 April 2016] birthday party at Sky-Vue Skateland in Rocky Mount and has not provided any form of support whether in cash or in kind, medical, or otherwise for [Jeffrey] since at least [26 December 2015].
>
> 12. In the six consecutive months immediately preceding the filing of the Petition, [Respondent-father] did [not] have

---

[6] Respondent-father asserts that "Findings of [Fact] 18, 19, 20, 21, and 22 are . . . insufficient to support an adjudication of abandonment," as well as neglect. Finding of Fact 18 stated "[Respondent-father] has a lengthy history of assaultive behavior against [Petitioner]." Finding of Fact 19 stated "[Respondent-father] has been involved in criminal activity for the majority of [Jeffrey's] life and has a lengthy criminal record including current pending criminal charges." Finding of Fact 20 stated "Both [Respondent-father] and his wife have numerous current positive references to alcohol and drugs in their social media postings." Findings of Fact 21 and 22 are listed above. As per my previous analysis above, Findings of Fact 18, 19, 20, and 22 were made for dispositional purposes under N.C.G.S. § 7B-1110(a) in assessing whether terminating Respondent-father's parental rights is in Jeffrey's best interest. Therefore, I do not consider them in reviewing the court's adjudication under N.C.G.S. § 7B-1111(a)(1) or (a)(7). *Cf. In re A.R.A.*, 373 N.C. 190, 195, 835 S.E.2d 417, 421 (2019) (holding that "we limit our review of challenged findings to those that are necessary to support the [D]istrict [C]ourt's determination that this ground [for termination] existed"). However, Finding of Fact 21 was made for both adjudicatory and dispositional purposes, and I consider it in reviewing the court's adjudication under N.C.G.S. § 7B-1111(a)(1).

*Murphy, J., concurring in the result in part and dissenting in part*

> any contact or communication with [Jeffrey] nor did he directly attempt to contact [Jeffrey] or provide [Jeffrey] any care, supervision, support, discipline, gift, card, or letter; [Respondent-father] has not met any need of [Jeffrey] and has been absent from [Jeffrey's] life since on or about [26 December 2015].

Respondent-father claims that Finding of Fact 9 was actually a conclusion of law. I agree that Finding of Fact 9 is, at least partially, a conclusion of law. *See In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (internal citations and alterations omitted) (holding that "any determination requiring the exercise of judgment, or the application of legal principles is more properly classified a conclusion of law"); *see also Plott v. Plott*, 313 N.C. 63, 73-74, 326 S.E.2d 863, 869-70 (1985). The trial court's classification of its own determination as a finding or conclusion does not govern this court's analysis on appeal. *See State v. Icard*, 363 N.C. 303, 308, 677 S.E.2d 822, 826 (2009); *State v. Burns*, 287 N.C. 102, 110, 214 S.E.2d 56, 61-62 (1975).

However, the classification of Finding of Fact 9 as, at least partially, a conclusion of law does not affect my review of whether clear and convincing evidence supported the trial court's adjudication of neglect under N.C.G.S. § 7B-1111(a)(1). To the extent Respondent-father does not except to the trial court's findings of fact, specifically Findings of Fact 11 and 12, they are binding on appeal. *In re H.S.F.*, 182 N.C. App. at 742, 645 S.E.2d at 384; *see also In re E.H.P.*, 372 N.C. at 395, 831 S.E.2d at 54 (holding that when "Respondent [did] not challenge[ certain] findings, . . . they

11

*Murphy, J., concurring in the result in part and dissenting in part*

are therefore binding on appeal."). Findings of Fact 11 and 12 establish Respondent-father's lack of contact with, support of, communication with, and provision for Jeffrey.

Additionally, Finding of Fact 21 was supported by competent evidence, as discussed above. Finding of Fact 21 found that "Respondent-father has not shown adequate interest with regard to raising and supporting [Jeffrey]."

Based on its findings of fact, the trial court reached the following conclusions of law:

> 2. [Respondent-father], through testimony and evidence presented at this proceeding, is determined to have neglected [Jeffrey] within the meaning of N.C.G.S. § 7B-101(b) and pursuant to N.C.G.S. § 7B-1111(a)(1).
>
> . . .
>
> 5. There is sufficient, clear [] and convincing evidence to terminate the parental rights of [Respondent-father] to [Jeffrey] pursuant to N.C.G.S. §7B-1111.

Findings of Fact 11 and 12 are binding on appeal, and Finding of Fact 21 is supported by competent evidence. Findings of Fact 11, 12, and 21 support the trial court's Conclusions of Law 2 and 5. The trial court's adjudication under N.C.G.S. § 7B-1111(a)(1) that Respondent-father neglected Jeffrey, and that Respondent-father's parental rights to Jeffrey should be terminated, was supported by clear and convincing evidence.

**3. Adjudication of Abandonment**

12

*Murphy, J., concurring in the result in part and dissenting in part*

Respondent-father claims the evidence and the trial court's findings of fact do not support its adjudication of grounds to terminate his parental rights pursuant to N.C.G.S. § 7B-1111(a)(7), which authorizes termination when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition." N.C.G.S § 7B-1111(a)(7) (2019). However, because I would affirm the trial court's adjudication under N.C.G.S. § 7B-1111(a)(1), there is no need to review the second ground for termination found by the trial court, and affirmed by the Majority, under N.C.G.S. § 7B-1111(a)(7). *In re E.H.P.*, 372 N.C. at 395, 831 S.E.2d at 53-54.

**4. Disposition**

Respondent-father also claims the trial court abused its discretion at the dispositional stage of the proceeding by concluding that termination of his parental rights is in Jeffrey's best interest. "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

"Once a trial court has concluded during the adjudication phase that grounds exist for termination of parental rights, it must decide in the disposition phase whether termination is in the best interests of the child." *In re D.R.F.*, 204 N.C. App. 138, 141, 693 S.E.2d 235, 238 (2010). Under N.C.G.S. § 7B-1110(a),

13

*Murphy, J., concurring in the result in part and dissenting in part*

> [t]he court may consider any evidence, including hearsay evidence as defined in [N.C.]G.S. [§] 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile. In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a) (2019); *see also In re D.R.F.*, 204 N.C. App. at 141-42, 693 S.E.2d at 238-39. While the statute seems to require findings concerning the relevant six listed factors, we have read the statute differently in past decisions. According to these decisions, although a court must consider each of these factors, written findings are required only "if there is 'conflicting evidence concerning' the factor, such that it is 'placed in issue by virtue of the evidence presented before the trial court[.]'" *In re H.D.*, 239 N.C. App. 318, 327, 768 S.E.2d 860, 866 (2015) (quoting *In re D.H.*, 232 N.C. App. 217, 222 n.3, 753 S.E.2d 732, 735 n.3 (2014)).

14

*Murphy, J., concurring in the result in part and dissenting in part*

I do not share the Majority's confidence that the trial court's ruling did not constitute an abuse of discretion. Even under our past reading of the statutory requirements, it appears the trial court did not make the necessary findings and abused its discretion in this matter—Finding of Fact 22 is unsupported by the evidence, and the findings are deficient under N.C.G.S. § 7B-1110(a)(1)-(6).

The trial court made the following findings of fact under N.C.G.S. § 7B-1110(a)(1)-(6):

> 13. [Jeffrey] is seven (7) years old . . . .
>
> 14. The likelihood that [Jeffrey] will be adopted is good; Petitioner's husband's testimony indicates his desire to adopt [Jeffrey] and [Jeffrey] indicated that he wished to be adopted by Petitioner's husband.
>
> 15. That the termination of parental rights will aid in the *accomplishment of the permanent plan* for [Jeffrey]; the adoption of [Jeffrey] by Petitioner's husband will provide needed emotional and financial stability and ensure [Jeffrey's] continued positive growth and development that has been fostered in [Jeffrey's] current home setting with Petitioner and her husband.
>
> 16. That the bond between [Jeffrey] and [Respondent-father]is poor, with [Jeffrey] having very little recollection of [Respondent-father].
>
> 17. The quality of the relationship between [Jeffrey] and the proposed adoptive parent is good; [Jeffrey] and the proposed adoptive parent have a strong familial bond, enjoy similar activities, and spend a great deal of time together; the proposed adoptive parent has provided [Jeffrey] with continued emotional and financial support in a parental role over approximately the last two (2) years.

18. [Respondent-father] has a lengthy history of assaultive behavior against [Petitioner].

19. [Respondent-father] has been involved in criminal activity for the majority of [Jeffrey's] life and has a lengthy criminal record including current pending criminal charges.

20. Both [Respondent-father] and his wife have numerous current positive references to alcohol and drugs in their social media postings.

21. [Respondent-father] has not shown adequate interest with regard to raising and supporting [Jeffrey].

22. [Respondent-father] has not declared or shown love for [Jeffrey] throughout this proceeding.

23. It is in the best interest of [Jeffrey] that the parental rights of [Respondent-father] for [Jeffrey] be terminated based on the foregoing findings of fact.

24. It is in the best interest of [Jeffrey] that the parental rights of [Respondent-father] for [Jeffrey] be terminated as Petitioner's husband has a current, loving, fatherly bond with [Jeffrey] whom he wishes to adopt.

25. It is in the best interest of [Jeffrey] that the parental rights of [Respondent-father] for [Jeffrey] be terminated as [Jeffrey] deserves the opportunity to have a normal life and an opportunity for someone else to father him and to stand in for [Respondent-father], who has exhibited inadequate interest in participating in the life of or the support of [Jeffrey].

(Emphasis added).

The trial court also included Conclusion of Law 6 concerning Jeffrey's best interest:

16

*Murphy, J., concurring in the result in part and dissenting in part*

> 6. It is in the best interest of [Jeffrey] that the parental rights of [Respondent-father] be terminated, and that [Jeffrey's] custody remain exclusively with the Petitioner.

Findings of Fact 13 to 22, though inadequately, track with the required findings under N.C.G.S. § 7B-1110(a)(1)-(6).

I agree with the Majority that Finding of Fact 23 is actually a conclusion of law, but would also include Findings of Fact 24 and 25 in that category. Findings of Fact 23 through 25, each of which begin "It is in the best interest of [Jeffrey] that the parental rights of [Respondent-father] for [Jeffrey] . . . be terminated . . ." actually amount to conclusions of law, inasmuch as they declare Petitioner's success in establishing the statutory ground for termination in N.C.G.S. § 7B-1111(a)(1) or (a)(7) under the applicable burden of proof in N.C.G.S. § 7B-1109(f). *See In re Helms*, 127 N.C. App. at 510, 491 S.E.2d at 675 (internal citations and alterations omitted) (holding that "any determination requiring the exercise of judgment, or the application of legal principles is more properly classified a conclusion of law"); *see also In re S.Z.H.*, 247 N.C. App. 254, 261-62, 785 S.E.2d 341, 347 (2016) (characterizing finding of fact under (a)(7) as a conclusion of law). The trial court's classification of its own determination as a finding or conclusion does not govern our analysis. *See State v. Icard*, 363 N.C. at 308, 677 S.E.2d at 826; *State v. Burns*, 287 N.C. at 110, 214 S.E.2d at 61-62. In addition to Finding of Fact 23, I would treat Findings of Fact 24 and 25 as conclusions of law and apply the appropriate de novo standard of review. *See Icard*, 363 N.C. at 308, 677 S.E.2d at 826 ("While we give appropriate deference

to the portions of [the relevant findings] that are findings of fact, we review de novo the portions of those findings that are conclusions of law.").

**a. Impact of Erroneous Finding of Fact 22**

Respondent-father challenges Finding of Fact 22, which states he "has not declared or shown love for [Jeffrey] throughout this proceeding." I agree with the Majority that the term "this proceeding" in Finding of Fact 22 referenced the entire period since Petitioner filed her petition on 12 December 2016, but I would also construe "this proceeding" to include the six-month period prior to the filing of the petition examined under N.C.G.S § 7B-1111(a)(7). I examine whether the trial court was presented with evidence that Respondent-father declared or demonstrated his love for Jeffrey.

The hearing transcript shows Respondent-father expressly testified that he loved his son, Jeffrey. Respondent-father testified as follows:

| | |
|---|---|
| [Respondent-father's Attorney:] | But you wanted to see your son more? |
| [Respondent-father:] | Yeah. I wanted to see my son. |
| . . . | |
| [Respondent-father's Attorney:] | Now are you bonded? Are you close? Does he seem to have a bond? |
| [Respondent-father:] | Yes, sir. *I love my son.* |

*Murphy, J., concurring in the result in part and dissenting in part*

(Emphasis added). The trial court was presented with Respondent-father's express testimony that he loved Jeffrey, and that he wanted to see Jeffrey more, during the proceeding referred to in Finding of Fact 22.

Further, Petitioner admitted that she knew Respondent-father wanted to spend time with Jeffrey. In her testimony, Petitioner admitted that Respondent-father's wife sent her a message that "[Respondent-father] . . . would really like to see [Jeffrey.]" This message came after Petitioner filed her petition. In light of Petitioner's admission that she received a message that Respondent-father wanted to spend time with Jeffrey, the trial court was presented with evidence that Respondent-father demonstrated his love for Jeffrey during this proceeding.

The trial court's Finding of Fact 22 is erroneous in light of testimony from Respondent-father and Petitioner. "A district court . . . necessarily abuse[s] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 L. Ed. 2d 359, 382 (1990). I agree with Respondent-father that Finding of Fact 22 was clearly erroneous, as the trial court was presented with evidence that Respondent-father declared and showed love for Jeffrey during the proceeding. Finding of Fact 22 failed to account for Respondent-father's testimony that he loves Jeffrey, or Petitioner's testimony that she was aware Respondent-father wanted to spend time with Jeffrey. Finding of Fact 22 not only lacks evidentiary support, but rather is overtly false.

19

*Murphy, J., concurring in the result in part and dissenting in part*

In light of Respondent-father's express testimony that he loved Jeffrey, made before the trial court, Finding of Fact 22 constitutes arbitrariness to the point of an abuse of discretion. *See White*, 312 N.C. at 777, 324 S.E.2d at 833. I would not merely disregard Finding of Fact 22, as the Majority does in reviewing the trial court's disposition. Instead, I would consider an overtly false finding, which characterized Respondent-father as failing to state or show love to Jeffrey when the evidence established the contrary, as a clear example of arbitrariness. I am concerned that the trial court's erroneous Finding of Fact 22 affected the reasoning underlying its conclusions of law in Findings of Fact 23 to 25 and Conclusion of Law 6—that termination of Respondent-father's parental rights was in Jeffrey's best interest. The trial court based its Findings of Fact 23 to 25 and Conclusion of Law 6 on dispositional Findings of Fact 13 to 22 tracking the required findings under N.C.G.S. § 7B-1110(a)(1)-(6). The required dispositional findings under N.C.G.S. § 7B-1110(a)(1)-(6) included the erroneous Finding of Fact 22 that "[Respondent-father] has not declared or shown love for [Jeffrey] throughout this proceeding." The trial court based its decision that terminating Respondent-father's parental rights was in Jeffrey's best interest, at least in part, "on a clearly erroneous assessment of the evidence," which constitutes an abuse of discretion. *Cooter & Gell*, 496 U.S. at 405, 110 L. Ed. 2d at 382.

**b. Deficient Dispositional Findings—Finding of Fact 15**

IN RE J.T.C.

*Murphy, J., concurring in the result in part and dissenting in part*

Respondent-father does not dispute the evidentiary support for Findings of Fact 13-20, which address each of the factors in N.C.G.S. § 7B-1110(a), at least in part. However, he contends a portion of Finding of Fact 15 is erroneous because it refers to Jeffrey's "permanent plan"—a feature only of proceedings initiated by a *county director* of social services under Article 4 of Chapter 7B. *See* N.C.G.S. §§ 7B-404.1, -906.1, -906.2 (2019). I agree that Jeffrey has no "permanent plan" as that term is considered in N.C.G.S. §§ 7B-404.1, 906.1, and 906.2. The trial court acknowledged "read[ing] the petition" filed *by Petitioner* at the outset of the trial. As the Majority mentions, and I also discussed above, Finding of Fact 15 was part of the trial court's order that followed the required findings in N.C.G.S. § 7B-1110(a)—specifically, N.C.G.S. § 7B-1110(a)(3). While the Majority categorizes the reference to a permanent plan as an oversight, the trial court's erroneous finding concerning a permanent plan that did not exist constituted a misapprehension of the law and was an abuse of discretion. *See, e.g.*, *Wilson v. McLeod Oil Co.*, 327 N.C. 491, 523, 398 S.E.2d 586, 603 (1990). "A trial court by definition abuses its discretion when it makes an error of law." *In re A.F.*, 231 N.C. App. 348, 352, 752 S.E.2d 245, 248 (2013). When a "judge below has ruled upon [a] matter before him upon a misapprehension of the law, the cause will be remanded . . . for further hearing in the true legal light." *State v. Grundler*, 249 N.C. 399, 402, 106 S.E.2d 488, 490 (1959). The trial court's consideration of this case as one involving a permanent plan, when Petitioner initiated the proceeding and no permanent plan existed, meant the trial court did not

21

consider the case in its true legal light. *Id.* I would remand for another hearing where this case is considered in its true legal light. *Id.*

## CONCLUSION

The trial court based its disposition on two erroneous findings—Findings of Fact 22 and 15. Finding of Fact 22 found that Respondent-father did not declare or show love to Jeffrey throughout this proceeding, which was clearly erroneous in light of testimonial evidence. Finding of Fact 15, which tracked N.C.G.S. § 7B-1110(a)(3), found that a permanent plan existed even though Petitioner initiated the proceedings, which was a misapprehension of law. The trial court's erroneous finding and misapprehension of law constituted an abuse of discretion in concluding Jeffrey's best interest will be served by termination of Respondent-father's parental rights. Accordingly, we should vacate the trial court's order and remand for further dispositional proceedings not inconsistent with this holding. I respectfully dissent.